# Staunton

## Helen Moore Haywood v. John F. Massie.

September 8, 1948.

Record No. 3338.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

*W. L. Devany, Jr.,* for the appellant.

*Cassell & Cassell* and *Harry A. Brinkley,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This appeal brings up for review the decree of the trial court refusing to allow the appellant, Helen Moore Haywood, any damages against the appellee, who, as the decree

found, had wilfully obstructed a roadway belonging to the appellant.

Mrs. Haywood filed her bill stating she was the owner of tracts 7, 6 and part of 5, as shown on a map filed with her bill, which she had acquired in 1943 by deed from Irving and wife, and was also the owner of the Coleman farm adjoining said three tracts.

She also alleged that the defendant, John F. Massie, appellee here, owned tracts 1, 2, 3 and 4, shown on said map, which he had acquired in 1942 by deed from Culpepper and wife, which contained this provision:

"The Roads as shown on said plat as being reserved are to be kept open for the mutual, common use and enjoyment for the lands abutting on the same. * * *."

The four tracts owned by Massie adjoin each other and form approximately a square block containing about sixty acres. To simplify this statement, the lands involved will be referred to as if their boundary lines run north and south and east and west. Of the Massie land, tract No. 2 is north of No. 1, No. 3 is west of No. 2 and No. 4 is south of No. 3.

The Coleman farm, owned by Mrs. Haywood, adjoins the Massie land on the latter's east side and north side. Tracts 5, 6 and 7 of Mrs. Haywood also adjoin each other— No. 6 adjoins No. 5 on the north and No. 7 adjoins No. 6 on the north. No. 7 and 6 also adjoin Mrs. Haywood's Coleman land on their eastern boundary. The common line between her tracts 6 and 7 and her Coleman land is 1136 feet long.

The map, with reference to which all these properties were conveyed, shows a 20-foot road leading from what is called the Bowers Hill road on the south, northwardly along the entire eastern boundary line of Massie's tracts 1 and 2, and between them and Mrs. Haywood's Coleman land. At the northeastern corner of Massie's No. 1 tract, another road intersects the first-named road and leads westwardly between Massie's tracts 1 and 2, 3 and 4, to Mrs. Haywood's tract 5, and along the southern boundary line of tract 5

to its southwest corner, and another road leads from there to the southern boundary line of Mrs. Haywood's tract 6, then proceeds eastwardly between her tracts 5 and 6 and on out between her Coleman land and Massie's tracts 3 and 2 to enter the 20-foot road first mentioned at the northeast corner of Massie's tract 2.

It was this last-named section of road—that is, the road along the northern line of Massie's tracts 3 and 2, and between them and the Coleman land—that Massie obstructed and, as Mrs. Haywood claimed, deprived her of entrance into her tracts 5, 6 and 7.

Her suit was for the purpose of enjoining Massie from interfering with her use of this roadway and for damages caused by his obstructing it.

Massie admitted plowing up the place where Mrs. Haywood contended this road was and preventing Mrs. Haywood from going in that way, but claimed that this was on his own land and that there was no roadway there which Mrs. Haywood was entitled to use.

The trial court heard the evidence *ore tenus,* viewed the premises and then entered the decree appealed from, holding that Mrs. Haywood was entitled to the roadway over Massie's land, as prayed for in her bill, but that she "is not entitled to recover damages for the wilful refusal of the defendant to allow the complainant the use of the roadway," and refused to allow damages therefor.

This refusal is the error assigned, and complainant says the only question presented is whether she is entitled to recover damages for the wilful obstruction of the easement without any attempt on her part to minimize the damages during the time the easement was obstructed.

The evidence is difficult to understand because the witnesses, for the most part, were allowed to testify by pointing to the map, and it is impossible to tell from the record where they were pointing. However, most of the evidence bears upon the controversy about the existence of the roadway, with which we are not now concerned.

The defendant obstructed the roadway in November,

1945. While the bill alleged that this act prevented the complainant from cultivating her tracts 5, 6 and 7 during the fall of 1945 and the year 1946, the evidence was that these tracts, which together contain about 53 acres, were in fact farmed and crops raised thereon in 1945.

Her evidence as to the loss for 1946 was quite vague. She testified that she lost two crops of wheat and one of soy beans, which the obstruction of the road prevented her from planting. She thought she lost $7,000, but furnished no figures to support that opinion.

Her husband testified they cultivated parcels 5, 6 and 7 in 1945 in wheat and soy beans, with about 30 acres in wheat and 8 in soy beans and a second crop of soy beans after the wheat was cut. They harvested about 30 bushels of wheat and 16 to 18 bushels of beans to the acre. He estimated the cost of material and labor for producing the crops in 1945, stated their selling price in 1946, and presumably the difference would be the loss suffered in not raising a 1946 crop, although he offered no result of such a calculation.

■ This evidence of expected profits was too vague, uncertain and indefinite to warrant a judgment therefor.

■ Profits are not excluded from recovery because they are profits. Recovery for their loss may be had if such loss is the proximate result of the defendant's wrong and if they are established with reasonable certainty. If remote, speculative, contingent or uncertain, they are not recoverable. *Whitehead* v. *Cape Henry Syndicate*, 111 Va. 193, 68 S. E. 263; *Manss-Owens Co.* v. *Owens & Son*, 129 Va. 183, 105 S. E. 543; *Forbes* v. *Wyatt*, 143 Va. 802, 129 S. E. 491; *Virginia Public Service Co.* v. *Steindler*, 166 Va. 686, 187 S. E. 353, 105 A. L. R. 1413; 15 Am. Jur., Damages, section 155, pp. 571-2.

Again, there was testimony for the defendant, which the court could have accepted, that the tracts in question were in fact farmed by or for the plaintiff in 1946, and crops taken therefrom. Upon that evidence, the map and his own view of the premises, the trial court could have con-

cluded that the blocking of the road in question did not prevent the complainant from having access to her land, and that the act of the defendant resulted in no damage to her.

The trial court did not state in its decree the reason for its finding, but complainant's counsel assume that the basis of the judgment was the failure of the complainant to minimize her damage. She contends there was no duty on her to do so, on the theory that the defendant's act created a nuisance and that there is no duty to minimize damage caused by the maintenance of a nuisance. She relies on *Mathias* v. *Holland*, 132 Va. 274, 111 S. E. 134, as authority for the proposition that the obstruction of her roadway constituted a nuisance.

The issue here was not involved there. The question there discussed was the necessity of first establishing at law the right to an easement before having an injunction to protect it. The court quoted from *Sanderlin* v. *Baxter*, 76 Va. 299, 306, 44 Am. Rep. 165, the parenthetical statement "that in a general sense every violation of an easement may be considered a nuisance." This is far from saying that in cases of obstructing an easement the party wronged may sit idly by and later claim damage that he could easily have prevented.

There are cases holding that no duty rests on an owner of property which has been injured by a nuisance to take active measures to prevent further injury in order to minimize his damages, especially where the nuisance is in a place over which he has no control. See 39 Am. Jur., Nuisances, section 138, p. 400, and cases there cited.

But that principle is generally limited to cases of absolute nuisance, or nuisances in the strict sense, where the standard of reasonable conduct does not require action by the injured person.

Even in a case of pollution, usually classified strictly as a nuisance, we approved an instruction that "it is the duty of a person injured by the wrongful act of another to take such reasonable precautions to prevent increase of

injury as would be taken by a reasonable man under the circumstances; * * * ." *Arminius Chemical Co.* v. *Landrum*, 113 Va. 7, 19-20, 73 S. E. 459, 465, 38 L. R. A. (N. S.) 272, Ann. Cas. 1913D, 1075. See also, *Chesapeake, etc., R. Co.* v. *Whitlow*, 104 Va. 90, 51 S. E. 182; *American Smelting, etc., Co.* v. *Riverside Dairy, etc., Farm*, 8 Cir., 236 F. 510; *McFarlane* v. *Niagara Falls*, 247 N. Y. 340, 160 N. E. 391, 220 Am. Dec. 799, 221 Am. Dec. 789, 57 A. L. R. 1, and Anno. at p. 7, *et seq.*

Generally speaking, "there is a distinction between a nuisance and a trespass, although many things are sometimes called nuisances which are mere trespasses, and it has been said that an action for a nuisance which violates a property right incident to the ownership of land is in the nature of one for trespass to realty. * * *." 39 Am. Jur., Nuisances, section 3, p. 282.

Here it is very clear that the plaintiff had the duty to exercise reasonable diligence to avoid the damage which she claims resulted from the defendant's wrong. She had other convenient and usable means of access to her lands, and it would be highly inequitable to sustain her contention that she could refuse to use them, and then require the defendant to pay for supposed profits on crops she might have raised, on the ground that he wrongfully blocked this particular means of entry. Such damage would in fact result from her own wrong, rather than from the initial wrong of the defendant.

"One who is injured by the wrongful or negligent acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover; * * *." 15 Am. Jur., Damages, section 27, p. 420.

" 'In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not

remote, speculative and contingent consequences, which the party injured might easily have avoided by his own act. * * *.' "

" 'The rule applies both in contract and tort, and illustrations may be drawn from every branch of the law.' "

* * * " 'Where an injured party finds that a wrong has been perpetrated on him, he should use all reasonable means to arrest the loss. He cannot stand idly by and permit the loss to increase, and then hold the wrong-doer liable for the loss which he might have prevented. It is only incumbent upon him, however, to use reasonable exertion and reasonable expense, and the question in such cases is always whether the act was a reasonable one, having regard to all the circumstances of the particular case.' " *Stonega Coke, etc., Co.* v. *Addington*, 112 Va. 807, 812-13, 73 S. E. 257, 258-59, 37 L. R. A. (N. S.) 969. See also, Anno., 81 A. L. R. 282.

The evidence in this case shows, practically without conflict, that the complainant, with trifling inconvenience, could have used the roadway that runs around three sides of her tract No. 5 and from thence have entered her tracts 6 and 7; or she could at practically any point north of the obstructed roadway, have crossed from her Coleman land into tract 7 and thence into tract 6. The defendant's evidence was that tract 7 adjoins the Coleman property without a ditch or any obstruction whatever; that there was nothing to prevent agricultural machinery from being carried through the Coleman property, and that there was nothing to prevent passage between tracts 7 and 6.

This condition not only appears from the evidence, but presumably was apparent on the ground to the judge of the trial court, and he was well warranted in rejecting the only reason given by or for the complainant as to why she did not plant crops during the time of the obstruction, which was that it was "ill-convenient" to get machinery in there.

The decree complained of was plainly right and is

*Affirmed.*