# Standard Accident Ins. Co. of Detroit v. Rose.

December 5, 1950.

Ervine Turner, Judge.

234

Craft & Stanfill, and Williams & Allen for appellant.

Grannis Bach for appellee.

JUDGE KNIGHT—Affirming in part, reversing in part.

On July 2, 1947, appellee, Green Rose, entered into a contract with E. L. Powers doing business as Powers Brothers Contruction Co., hereinafter referred to as Powers, whereby the latter agreed to construct two dwelling houses on a tract of land belonging to Rose in Jackson, Ky., at the agreed price of $11,575.00 for the two, under specifications filed with the contract. Powers was to furnish all labor and materials and was to complete the construction by December 15, 1947, and was to pay Rose $100 per month as liquidated damages for each month after that date until completed. To secure Rose, Powers was to execute bond with corporate surety in the amount of the contract. Upon signing of the contract, Rose's attorney drew up a bond which was attached to the contract and specifications and turned over to the local agent of the Standard Accident Insurance Co. of Detroit, appellant herein. All were submitted to the appellant, which would not, or at least did not, accept the bond as drawn up by Rose's attorney but instead executed and submitted to Rose on its regular forms used by it two bonds for $5800 each, one titled a "Performance Bond" and the other, a "Labor and Material Payment Bond." After going over these bonds with his attorney, Rose accepted them in lieu of the bond which had been drawn up by his attorney and upon their acceptance he turned over to Powers the full amount called for in the contract, $11,575, and Powers began construction. He soon ran into financial difficulties and about October 21, 1947, ceased work on the houses and abandoned the contracts whereupon appellant was called upon as surety to make

good on the contract. A dispute arose as to the extent of appellant's liability and appellee filed this suit which in the final amended petition prayed judgment for $9000 necessary to complete the two houses in accordance with the specifications, $1000 for deterioration of the buildings resulting from the abandonment of the contract by Powers, and $600 for loss in rental for a period of six months from December 15, 1947, when they should have been completed. An amended petition also set out that Powers was indebted to certain named parties in various named amounts totaling $691.80 for materials used in construction of the buildings and that appellee should recover of appellant this sum for the benefit of those parties. After various motions and demurrers were filed and passed on, the issues were made up and the case was, by agreement, submitted to the judge without the intervention of a jury on the pleadings, exhibits, and the small amount of proof taken by appellee. Appellant took no proof. Whereupon a judgment was entered in favor of appellee in the sum of $10,200, being $9000 necessary to complete the buildings, $600 for their rental value until the time they could have reasonably been completed and $600 for deterioration in value of the partly constructed buildings. He was also given judgment for $691.80 for and on behalf of the materialmen who had set up claims for materials furnished. Admitting its liability on the performance bond, appellant paid into court the sum of $5800 called for in that bond and subsequently paid to each of the materialmen the sums due each for materials used on the buildings and appealed from the balance of the judgment amounting to $4400 and that is the amount involved in this appeal.

It is appellant's contention that the two bonds which it executed to protect appellee are completely separate; that it had done all it was required to do under the performance bond by paying the full amount of its obligation thereunder after Powers failed to live up to his contract; that it is liable on its labor and material payment bond only for labor and material used on the buildings and for which the contractor failed to pay and of which it was given proper notice under the contract; that having paid all of these it has no further liability under its bond and therefore the judgment

should be reversed to the extent of $4400 involved in this appeal.

It is the contention of the appellee that the owner intended the two bonds to protect his payment of the full contract since the total amount of the two about equalled the sum paid on the contract; that appellant knew this and intended to furnish the owner with bonds which would fully protect appellee in paying to the contractor the full amount of the contract price and therefore the two contracts should be considered together. He further contends that even separated and considered alone the labor and material payment bond should be construed as not being limited to labor and material furnished to the contractor and used on the job but for all labor and materials which the contractor was to furnish to complete the contract. He further contends that if the labor and material payment bond is not so construed, then, that it should be reformed to cover labor and materials which the contractor was to furnish to complete the contract. He further contends that appellant is estopped to deny that the two bonds fully protect the owner and give him broader coverage than the single bond submitted.

To set out the two bonds here involved in detail would unduly lengthen this opinion. It is only necessary to say that the performance bond, and denominated as such, contains the usual provisions of that character of bond, and the obligation of the bond is that "if the contractor shall promptly and faithfully perform said contract (referring to the contract between Powers and Rose), then this obligation shall be void, otherwise it shall remain in full force and effect." We think this bond can have but one meaning and that is the natural one usually given to such bonds, that it guarantees that if the contractor defaults and fails to complete the contract, then the surety can itself complete the contract, as is authorized by the terms of the bond, or pay the full amount of its obligation thereunder of $5800, as it has done in this case. We think it is unnecessary to further consider this bond.

Since the principal dispute between the parties is the construction of the labor and material payment bond, it will be necessary to quote its more important provisions which follow:

"Now, therefore, the condition of this obligation is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

"1. A claimant is defined as one having a direct contract with the Principal for labor, material or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.

"2. The above named Principal, and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant in the name of the Owner, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon, provided however, that the Owner shall not be liable for the payment of any costs or expenses of any such suit.

"3. No suit or action shall be commenced hereunder by any claimant, — (a) Unless claimant shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which

the aforesaid project is located, save that such service need not be made by a public officer.''

Lifting from its context these words in the first literary paragraph above, ''for all labor and material * * * reasonably required for use in the performance of the contract,'' it is appellee's contention that they mean not just payment for those furnished to the contractor for whom they are surety but that the intent of the bond was to cover the owner for those materials and the labor reasonably required to complete the contract since the owner would be the only person primarily interested in the payment. When these quoted words are read in connection with the other quoted paragraphs, it is obvious that that construction would be a strained and unnatural one. The numbered paragraphs define a claimant, tell how he shall present his claim, the conditions under which he may enforce such claim, etc., all clearly indicating that what is meant is that the surety will guarantee the owner that all bills for labor or materials contracted for and used by the contractor, for whom they are surety, will be paid by the surety if he defaults. The purpose and only purpose of a labor and materials payment bond is to protect the owner against the claims of those who furnish labor and materials to the contractor because, if he fails to pay these bills, mechanics liens can be filed against the owner and payment enforced even though the owner had no direct dealing with the labor and materialmen. Furthermore, we think the words, ''all labor and material used or reasonably required for use in the performance of the contract,'' were inserted in the bond to protect the surety against extravagant and unnecessary use of labor and materials, as might be attempted by some contractors. This seems to us a more reasonable construction than the one for which appellee contends.

We think the two bonds here involved cover distinct and separate defaults of the contractor. It only remains to consider whether they should be reformed in such a way as to, in effect, merge them or to reform the labor and material bond so as to have it secure appellant against failure of the contractor to perform the contract. Also to be considered is the question of estoppel. Both the attempted reformation and plea of

estoppel are based largely on a letter supposed to have been written by appellant to its local agent or to the contractor. This letter was never produced and part of its alleged contents was shown, over appellant's objection, by the testimony of appellee and his attorney. The substance of their testimony was that this letter stated that these two bonds fully protected Mr. Rose and were broader coverage than was contained in the bond which had been submitted to the surety. The original letter is, of course, the best evidence of its contents and before parole evidence of its contents is admissible, it must be shown that the letter is lost and that diligent efforts to locate it have been unsuccessful. Taulbee v. Drake, 303 Ky. 487, 198 S.W.2d 50, and cases therein cited. There was no such testimony and the court erred in admitting parole evidence of its contents over appellant's objection.

But if the testimony of what the letter contained was admissible, we do not think it would justify a reformation of the contract. There is no showing that there was any misrepresentation of what the bonds covered or any fraud practiced on appellee. When the bonds were returned they were submitted by appellee to his attorney and after examination of the bonds his attorney advised that they be accepted. These bonds showed plainly on their face that one was a performance bond and the other a labor and material payment bond and there was no representation to the contrary shown by the evidence. At most there was a statement in the letter, had it been admissible as evidence, that the two bonds fully protected Mr. Rose and that there was a broader coverage than in the submitted bond. If appellee and his attorney did not believe this after examination, they did not have to accept them. Having done so, appellee is bound by the terms of the bonds which are clear and unambiguous. We think there is no ground for reformation of the bonds to show that they were different from what they purported to be or that appellant is estopped to deny this.

The judgment contained a paragraph which adjudged that the materials which the contractor had on hand for use in the construction of the buildings and which materials are now in the hands of appellee could be kept by the latter and appellant was not entitled

to credit for these materials on its bonds or the judgment against it. Since there is no appeal as to this part of the judgment, it is to that extent affirmed. So much of the judgment as exceeds the sum of $5800 is reversed with directions to enter one in accordance herewith.