MIDDLE-WEST CONCRETE FORMING AND EQUIPMENT COMPANY

*v.*

GENERAL INSURANCE COMPANY OF AMERICA, *et al.*

(No. 14027)

Decided July 10, 1980.

*William D. Levine, Marshall & St. Clair,* for appellant.

*Wilson Anderson, Steptoe & Johnson,* for appellees.

McGRAW, JUSTICE:

Middle-West Concrete Forming and Equipment Company appeals from an order of the Circuit Court of Cabell County which set aside a jury verdict in its favor and awarded a new trial to appellee, General Insurance Company of America. Appellant contends that the trial

court erred in not considering the evidence in the light most favorable to appellant and asks us to reverse the order of the lower court and reinstate the jury verdict. We agree and reverse the lower court's ruling.

Appellant is a small construction company located in Cincinnati, Ohio, and engaged in the business of renting materials and equipment used in the fabrication of poured concrete structures. In 1971, appellant leased to Oakridge Construction Company (hereinafter Oakridge), a general contractor with headquarters in California, certain equipment to be used in the construction of a Holiday Inn hotel in Huntington. Under the terms of the leasing agreement, Oakridge agreed to pay monthly rental on the equipment and to be responsible for returning it to the point of shipment upon completion of the work. Appellee was engaged by the owner of the project, Continental Realty, as a surety company and executed a labor and material payment bond on Oakridge, guaranteeing payment "for all labor and material used or reasonably required for use in the performance of the Contract."

On June 6, 1973, Oakridge ceased work on the project prior to its completion. Oakridge did not notify appellant of the work stoppage, nor did it return the materials as required under the terms of the agreement. No further work was done on the structure until November, 1974, when the owner engaged another contractor, the Schurman Construction Company (hereinafter Schurman) to complete the hotel. Much of appellants' material remained on the job site until January or February of 1975, at which time appellant shipped the equipment from the job site at its own expense. Appellant maintains that some of the forms were still in use on the construction project at the time of trial in July 1976. Under Oakridge's labor and materials payment bond, appellee paid all rentals due appellant up to July 1, 1973, but refused to pay any sums claimed by appellant after that date. Appellant instituted this action in the Circuit Court of Cabell County to recover unpaid rental on the equipment and interest on the accrued installments.

At trial, appellee contended that the labor and materials payment bond covering Oakridge was in effect only during the time Oakridge was actively involved in construction and that it was not obligated to pay rental accruing after the contractor walked off the job. Appellee also maintained that appellant was under a duty to mitigate its damages by removing its equipment from the job site once it learned of the work stoppage. Appellant introduced evidence showing that the building in its unfinished state was structurally unsound and prone to collapse upon removal of the equipment. Appellant also introduced evidence to show that appellee's own engineers had forbidden removal of the rented forms. Appellee countered this showing by introducing evidence that, with minor exceptions, the equipment could have been removed within a month after the concrete structures had been poured without endangering the soundness of the building.

The jury returned a verdict in favor of appellant in the amount of $50,000. Upon motion of appellee, the trial court concluded that the verdict was contrary to the law and ordered a new trial. Appellant contends that the trial court did not consider the evidence in the light most favorable to appellant but rather re-evaluated the evidence and ordered the verdict set aside upon reaching a conclusion different from that of the jury. Appellant also contends that the verdict was not contrary to the law and asks us to reverse the order of the trial court and reinstate the verdict. We grant appellant relief.

Appellant's first contention is that trial court should not have set aside the jury's verdict based on the jury's failure to follow the Defendant's Instruction No. 9[1] since

---

[1] Defendant's Instruction No. 9:

"The Court instructs the jury that claims for which the contractor may be liable for rental of equipment used upon the building project, the surety upon his materials and payment bond may not be liable since the liability of the surety is limited to the time when the material was actually in use by the contractor and does not include the time when the equipment

that instruction incorrectly states the law. The instruction informed the jury that appellant's claim depended upon the use of the materials in the prosecution of the construction under the terms of the payment bond without regard to the terms of the rental contract between the parties. We find no merit in appellant's contention.

Our review of the applicable case law in this area reveals that the purpose of the labor and materials payment bond is to protect the owner of the structure from liens levied against the building by creditors of the contractor who supplied labor and materials actually used by the contractor in furtherance of the contracted construction. *Standard Accident Ins. Co. v. Rose*, 314 Ky. 233, 234 S.W.2d 728 (1950); *Portland v. O'Neill*, 98 Or. 162, 192 P. 909 (1920).[2] It is the labor and material supplied for the prosecution of the work which is protected by the bond and not obligations incurred by the contractor which do not approximate the construction contracted to be done. *Fitzgerald v. Neal*, 231 P. 645 (Or. 1924). *Cf., Chief Industries, Inc. v. Schwendiman*, 587 P.2d 823 (Or.

was not in use to further the builder's contract. The claim for rental of said equipment depends for its validity, as against the materials and labor payment bond, upon the equipment being employed in the prosecution of the work and not upon the terms of the contract under which it was leased; therefore, if you believe from a preponderance of the evidence in this case that the material of Middle-West was not used after June 7, 1973 to further the construction of the Holiday Inn by Oakridge, then you may find for the defendant, General Insurance Company, since the test is not the terms of the contract between Middle-West and Oakridge but whether or not the material was used by Oakridge to further its activities in completing the construction of the Holiday Inn."

[2] The labor and materials payment bond is to be distinguished from the performance bond. A performance bond guarantees that the contractor will perform the contract and usually provides that if the contractor defaults and fails to complete the contract, the surety can itself complete the contract or pay damages up to the limit of the bond. A labor and materials payment bond, on the other hand, guarantees the owner that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults. *Standard Accident Ins. Co. v. Rose*, 314 Ky. 233, 234 S.W.2d 728 (1950).

1978). The surety is not liable for damages resulting from the breach of the rental agreement by the contractor which are not covered by the payment bond. The remedy of the supplier of labor or materials for such damages is a breach of contract action. *Olive v. U.S.*, 297 F.2d 70 (5th Cir. 1961); *Lucas v. Western Cas. & Sur. Co.*, 176 F.2d 506 (10th Cir. 1949); *Firestedt Co. v. U.S. Fireproofing Co.*, 125 F.2d 1010 (10th Cir. 1942); *American Surety Co. v. Wheeling Structural Steel Co.*, 114 F.2d 237 (4th Cir. 1940). The trial court correctly instructed the jury that appellee's liability in this case was limited to the time the materials were actually used in furtherance of the construction without regard to the rental agreement between appellant and Oakridge.[3]

The trial court determined, however, that the jury verdict was contrary to the law as stated in Defendant's Instruction No. 9 and concluded that the jury disregarded that instruction in reaching its verdict. The trial court's reasoning, as stated in its memorandum opinion, which was incorporated by reference in the final order,[4] was that the evidence in the case was insufficient to show that appellant's equipment was being used in the construction of the building after July 1, 1973, the date of the last payment by appellee. Appellant insists, however, that the trial court actually re-evaluated the evidence and upon reaching a conclusion different from that arrived at by the jury, ordered that the verdict be set aside.

At the outset, we note that the rule in this state is that in determining whether a jury verdict is supported by the evidence, every reasonable and legitimate inference fairly arising from the evidence in favor of the

---

[3] We are of the opinion, however, that once the liability of the surety has been established, the terms of the underlying contract may be referred to in assessing damages.

[4] Where the written opinion of the trial court is made part of the record, the reviewing court may consider the written opinion in determining the reasons for the trial court's rulings and judgment. *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.*, 152 W.Va. 549, 165 S.E.2d 113 (1968).

party for whom the verdict is returned must be considered, and those facts which the jury might properly find under the evidence must be assumed to be true. *Bates v. Sirk*, 159 W.Va. 917, 230 S.E.2d 738 (1976); *Cook v. Harris*, 159 W.Va. 641, 225 S.E.2d 767 (1976); *Yeager v. Stevenson*, 155 W.Va. 16, 180 S.E.2d 214 (1971). The action of the trial court in setting aside a verdict for the plaintiff, while entitled to peculiar weight on appeal, will nonetheless be reversed by this Court where a consideration of all the evidence clearly shows a proper case for jury determination. *Utter v. United Hospital Center, Inc.*, 160 W.Va. 703, 236 S.E.2d 213 (1977); *Jones, Inc. v. W. A. Wiedebusch Plumbing & Heating Co.*, 157 W.Va. 257, 201 S.E.2d 248 (1973). These are the principles that guide us in our determination of the issue.

As we have already noted, the surety is not liable on its bond for materials not used by the contractor in the performance of his contract. *State v. Trojan Powder Co.*, 253 P. 520 (Or. 1927). This has been held to be the case where materials were rented but not used by the contractor, *Oregon v. Security Const. Co.*, 3 F.2d 274 (D.C. Or. 1925); *Portland v. O'Neill, supra;* where materials were ordered by the contractor but were then diverted for use on another project, *State v. Trojan Powder Co., supra;* where, through no fault of the contractor, work ceased and rented equipment remained idle, *U.S. v. Maryland Casualty Co.*, 147 F.2d 423 (5th Cir. 1945). Appellant contended at trial, however, that its materials were required to remain in place in order to prevent structural failure of that portion of the structure completed by Oakridge before its walkout, and were thus actually in use during the work shutdown.

Appellee does not argue, and we do not think it can be maintained, that when materials are necessary to prevent the structural failure or collapse of a half-completed structure, those materials are not being used in performance of the contract. We think that the terms of a labor and materials payment bond guaranteeing payment by the surety "for all ... materials used or reasonably required for use in the performance of the Contract," con-

template materials necessary to maintain the structural integrity of construction left uncompleted by a defaulting contractor and that the surety is liable for payment for materials so used. The only question for the jury then, was whether some or all of appellant's equipment was actually used or reasonably required after Oakridge defaulted to support concrete structural units incapable of supporting themselves, as claimed by appellant. The trial court found that the only evidence that any of the materials actually were required to support the structure was the testimony of appellee's expert witnesses, structural engineers who were of the opinion that, with the exception of 8 to 10 tilt-up braces, none of appellant's equipment was necessary to the structural integrity of the construction already completed. We do not agree with the lower court's assessment of the evidence.

There was no dispute that most of the equipment was in place at the job site during the period following Oakridge's walkout.[5] Appellant's representative testified that many of the materials supplied to Oakridge were used to support concrete structural units until they could be connected to other units which would provide support or until they could support themselves. He also testified that he was warned by appellant's consulting engineers, who were familiar with the project, not to attempt to enter the site and remove the equipment due to a possibility of collapse and that appellant's insurance company refused to cover the risk of removing the materials. When work recommenced eight months after Oakridge walked out, appellant inquired of the owner about retrieving its materials and was told by the owner's representative that nothing could be moved from the structure until work was done to secure the units safely. Schurman's superintendent testified that appellee's engineers instructed him not to attempt any construction

---

[5] Appellant conceded that some of the equipment had already been removed from the structure and was piled upon the ground, obviously no longer being used in furtherance of the construction, shortly after the work ceased.

or to remove any materials due to the danger of collapse or structural failure. Finally, appellee's engineers prepared a study of the structure which questioned the soundness of the construction, although they testified at trial that with the exception of a few tilt-up braces, appellant's equipment could have been removed without precipitating a structural collapse. Appellant's representative testified that after reading appellee's reports he was afraid to remove appellant's materials due to the possibility of collapse.

It is our opinion that the evidence in this case presented a factual dispute which was a proper question for jury determination. The trial court relied heavily on the testimony of appellee's structural engineers and disregarded the testimony of appellant's witnesses in reaching its conclusions as to the sufficiency of the evidence to support the verdict. That the trial court may not do. It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact. *Blamble v. Harsh*, ____ W.Va. ____, 260 S.E.2d 273 (1979), *Bourne v. Mooney*, 163 W.Va. 144, 254 S.E.2d 819 (1979). The testimony of expert witnesses is not exclusive and the jury has the right to weigh the testimony of all witnesses, experts and otherwise. *Webb v. C&O Ry. Co.*, 105 W.Va. 555, 144 S.E. 100 (1928). The circuit court abused its discretion in ordering the verdict set aside due to the insufficiency of the evidence and we reverse on this point.

Appellant also contends that the trial court erred in concluding that Plaintiff's Instruction No. 13,[6] dealing

---

[6] PLAINTIFF'S INSTRUCTION NO. 13

The Court instructs the jury that the law requires a party to use ordinary care and to make reasonable efforts and reasonable expense to lessen the damages he would otherwise sustain as a result of another's breach of contract. In other words, an injured party is responsible for doing only those things which can be accomplished at a reasonable expense and by reasonable efforts. Thus, even if you find that Middlewest [sic] Concrete Forming and Equipment Company could have removed its equipment from the Holiday Inn, its failure to do so will not lessen plaintiff's recovery unless you further find by a prepon-

with a party's duty to mitigate damages, was misleading to the jury and in setting aside the verdict on that ground. We must agree with appellant's contentions on this point.

The instruction correctly states the law with respect to mitigation of damages in breach of contract actions.[7] *Generally*, 22 Am. Jur.2d Damages § 30; 5B M.J., Damages §§ 16, 17, 48. *See, Continental Realty Corp. v. Andrew J. Crevolin Co.*, 380 F. Supp. 246 (S.D. W.Va. 1974); *Huxethal v. St. Lawrence, etc., Mfg. Co.*, 53 W.Va. 87, 44 S.E. 520 (1903); *Haywood v. Massie*, 188 Va. 176, 49 S.E.2d 281 (1948). We do not think the instruction was confusing or misleading to the jury as to the law therein stated, especially in view of the fact that appellee offered a similar instruction emphasizing its position on the issue.[8]

---

derance of the evidence that it could have removed the equipment with a reasonable expense and by reasonable efforts in the light of the conditions then and there existing. But if you believe that Middlewest [sic] could not at reasonable expense and in the exercise of ordinary care remove its equipment, then you may find that it was not required to do so.

[7] We note here that this action was not instituted on a theory of breach of contract but rather, on the surety's liability under its bond to pay for materials and labor supplied to the contractor pursuant to the construction. Theories of recovery or of limitation of recovery for breach of contract have no place in an action to recover under a payment bond. *See, Olive v. U.S.*, 297 F.2d 70 (5th Cir. 1961); *Lucas v. Western Cas. & Sur. Co.*, 176 F.2d 506 (10th Cir. 1949); *Firestedt Co. v. U.S. Fireproofing Co.*, 125 F.2d 1010 (10th Cir. 1942); *American Surety Co. v. Wheeling Structural Steel Co.*, 114 F.2d 237 (4th Cir. 1940). Here, however, both parties offered instructions on the theory of mitigation of damages and no objection was raised, below or here, to the giving of these instructions on this ground. As neither party raises the issue, the error is deemed waived and we need not consider the issue in our resolution of the case.

[8]     DEFENDANT'S INSTRUCTION NO. 10:

The Court instructs the jury that the law imposes upon a party injured by another's breach of contract the active duty of using all reasonable exertions to render the injury as light as possible. If by his negligence or willfulness he allows the damages to be unnecessarily enhanced, the increased loss—that which was avoidable by the performance of his duty—falls upon

The trial court, however, concluded that the jury could not have understood the instruction and still have returned a verdict for appellant. This conclusion was based in part upon the lower court's finding that the equipment could have been removed without damage to the structure. The trial court also gave great weight to the testimony of appellee's engineers who opined that appellant could have reasonably removed its equipment at a cost of $3,000 to the actual statement of appellant's representative that the actual cost of dissembling and transporting the rented forms was $1,725.77. The court also relied heavily on the fact that appellant made no demand for return of the materials or any attempt to retrieve them on its own initiative.

First we note that the amount appellant's representative paid to have equipment removed and shipped from the job site did not include all of the materials rented to Oakridge. Appellant's representative testified that some of the equipment had not yet been returned at the time of trial. Moreover, according to appellant's representative, the $1,725.77 figure covered only freight bills for moving the equipment and expenses for two of appellant's representatives to supervise the loading of the materials. Appellant's representative testified that removal of the equipment during the work shutdown would have entailed using qualified carpenters and laborers and construction equipment which appellant does not have in its employ or possession and estimated that it would have cost appellant $64,000 to hire the men and

him. The reasonable cost of the measures which the injured party is bound to take to lessen his damages may be recovered.

The Court therefore instructs the jury that if you believe from a preponderance of the evidence that Middlewest [sic] failed to make any effort to remove its property from the construction site and if you further believe that all or portions of said property could have been removed without jeopardizing the structural integrity of the building, and that plaintiff failed to take any reasonable action to mitigate its damages, then you may not award plaintiff any sum over and above the actual expense plaintiff would have incurred in removing its property from the building site.

equipment necessary to effect the removal. The $1,725.77 figure did not cover these charges since the removal of the equipment in January and February of 1975 was effected by Schurman's men and equipment.

Appellant's representative testified that several months after the work stoppage, he consulted with the owner as to how long the equipment would be in use. Although appellant made no request to remove its materials at this time, appellant's representative was told that construction would begin again soon and that the materials should be left on the job site. At one point appellant's representative was told by an armed guard on the site that he would not be permitted to enter at any time. In November, 1974, appellant was told by a representative of the owner that it could not retrieve its materials until further work was done on the structure. In addition, Schurman's project supervisor testified that he was told by appellee's engineers not to remove anything or do any work on the structure.

We think this evidence presents sufficient support for appellant's position to merit resolution of the question by the jury. It appears that the trial court chose to believe the testimony of appellee's experts on both of these questions rather than appellant's evidence. That is not sufficient grounds to justify the court's action in setting aside the verdict where there was clearly enough evidence to support a different conclusion. The question was one for jury determination and the trial court erred in setting aside the verdict.

Appellee raises several assignments of error in support of its contention that we should affirm the ruling of the trial court setting aside the jury verdict and ordering a new trial. These assignments which follow are without merit.

First, appellee contends that the verdict was correctly set aside because the amount awarded by the jury exceeded the amount of the ad damnum clause in appellant's complaint and because appellant did not amend

its complaint to conform to the amount of the recovery sought at trial. Challenges based on such technicalities cannot prevail under our Rules of Civil Procedure. *See,* W. Va. R. Civ. Pro., rules 54 (c) and 15 (b). The propriety of the verdict is tested by the evidence to support the recovery and not by the amount of the ad damnum clause. *Smith v. Brady,* 390 F.2d 176 (4th Cir. 1968). *See, State ex rel. Board of Education v. Spillers,* ____ W.Va. ____, 259 S.E.2d 417 (1979).

Appellee also contends that the order setting aside the verdict should be affirmed because the trial court erred in permitting appellant to introduce evidence of claimed interest charges. Appellee erroneously maintains that appellant was not entitled to recover interest charges. The general rule is that a party may recover interest only where the claim is liquidated or where the amount of the debt may be ascertained by computation. *Lockard v. City of Salem,* 130 W.Va. 287, 43 S.E.2d 239 (1947). Where the demand is for work done or material furnished, interest should be allowed from the date the labor is done or the material furnished, or from the date whereby the terms of the contract payment should have been made. *Bennett v. Federal Coal & Coke Co.,* 70 W.Va. 456, 74 S.E. 418 (1912). The fact that appellee disputed appellant's claim and required judicial determination of the issues involved does not negate the fact that the amount of appellant's claim was readily ascertainable by computation prior to the rendering of a verdict in the matter. Evidence of interest charges was properly allowed.

Finally, appellee asserts that at trial the lower court admitted, over objection, hearsay testimony prejudicial to appellee. Of the several examples noted by appellee, we note that one does not involve hearsay at all, but is rather original evidence of a recitation of what the witness said to a third party. The other instances where hearsay testimony was admitted fall within the statement of intent or state of mind exceptions to the hearsay rule and were admissible.

For the reasons stated above, we conclude that the Circuit Court of Cabell County erred in setting aside the verdict and in ordering a new trial and we reverse the ruling of that court and reinstate the jury verdict.

*Reversed; verdict reinstated.*