411 S.E.2d 862

**In the Matter of Ozell EPLIN Magistrate.**

**No. 19767.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 1991.

Decided Dec. 6, 1991.

208

Louis George, Huntington, for Magistrate Eplin.

Charles R. Garten, Charleston, for Judicial Hearing Com'n.

PER CURIAM:

This is a judicial disciplinary proceeding in which the Judicial Hearing Board on July 26, 1991, recommended dismissal of a complaint against respondent, Magistrate Ozell Eplin, which alleged that the respondent refused to release a defendant to the complainant, Thomas J. May, a bail bondsman, and that the respondent showed favoritism [1] toward another bonding company in Cabell County, West Virginia. Based upon these allegations, the complaint charged Magistrate Eplin with violating Canon 1, Canon 2, Canon 3A(1) and Canon 3A(5) of the Judicial Code of Ethics.[2] After examining the record before the Court, we affirm the recommendation of the Judicial Hearing Board and dismiss the complaint.

Around noon on January 6, 1989, Mr. May, a bail bondsman working for Walker Bonding Company, went to the office of Magistrate Eplin for the purpose of signing a bond on behalf of defendant Roger Gibson, according to Mr. May's testimony before the Judicial Hearing Board. Mr. May testified that the magistrate refused to let him sign the bond even after he showed the magistrate a photocopy of a circuit court order which authorized him to act as a bail bondsman.[3] Mr. May's testimony indicates that the magistrate told him that he did not

1. Other than the allegation made in the complaint, there was absolutely no evidence or testimony before the Judicial Hearing Board which would indicate that Magistrate Eplin demonstrated favoritism toward another bonding company. Therefore, we find this allegation to be without merit.

2. The relevant canons and pertinent portions thereof are as follows:

Canon 1:
A Judge Should Uphold the Integrity and Independence of the Judiciary.
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2:
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
Canon 3A(1) and (5):
A Judge Should Perform the Duties of His Office Impartially and Diligently.
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
. . . .
(5) A judge should dispose promptly of the business of the court.

3. West Virginia Code § 51-10-8 (1959), in relevant part, states that "no person ... shall, either as principal, or as agent, clerk, or representative of another, engage in the bonding business in any court regularly exercising original jurisdiction until he shall by order of such court of record be authorized to do so."

have the proper paperwork necessary to act as a bondsman.

Mr. May then testified that he left the magistrate's office and went to the office of attorney R. Lee Booten, II, to seek his legal advice in this matter. According to Mr. Booten's testimony, he went to the circuit clerk's office and obtained a certified copy of the court order which authorized Mr. May to act as a bail bondsman and took the order to Magistrate Eplin. Mr. Booten's testimony further indicated that once the court order was produced, Magistrate Eplin indicated he would permit Mr. May to sign the bond.

However, Mr. May at that time did not again attempt to sign the bond in Magistrate Eplin's court. Rather, Mr. May chose to wait some seven hours before going back to magistrate court and signing the bond before a different magistrate. Consequently, Mr. May caused the defendant Gibson to remain incarcerated some seven hours, not the magistrate.

Magistrate Eplin's testimony revealed that he declined to permit Mr. May to sign the bond on the basis that neither Mr. May nor his bonding company's name was on the approved list[4] of bail bondsmen which the magistrate kept in his office.[5] He further testified that the court order which Mr. May produced for him was not certified, nor did it contain a judge's signature.

Additionally, Magistrate Eplin testified that he had permitted Mr. May to sign a misdemeanor bond several days prior to the January 6, 1989, incident, when Mr. May showed him an uncertified court order. However, Magistrate Eplin's testimony indicated that he instructed Mr. May at that time that if he wished to sign any felony bonds, he would have to get a certified court order.

Finally, the owner of Walker Bonding Company, Victoria Ann Walker, testified that after Mr. May filed an ethics complaint against Magistrate Eplin for refusing to let him sign the bond, the magistrate told her to try and get the complaint dismissed or she would not be permitted to sign any more bonds in his court. Magistrate Eplin denied this and indicated that when Mrs. Walker's husband came into his office to pay a bond forfeiture for Mrs. Walker, it was he who told Magistrate Eplin that he would personally see that Mr. May withdrew his ethics complaint.

■ In syllabus point 1 of *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980) this Court held that "[t]he Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] ... Board in disciplinary proceedings." Further, "[u]nder Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'" Syl. Pt. 4, *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983).

The evidence presented in this matter does not amount to the clear and convincing evidence necessary to support a violation of either Canon 1 or Canon 2 of the Judicial Code of Ethics.

■ The evidence relied upon to support the charge that Magistrate Eplin failed in carrying out the judicial responsibilities of his office was his failure to know the authorized bondsmen in his county. The record indicates that the updated authorized bonding company list had been gener-

---

4. Ralph M. Roberts, the trial court administrator for the Sixth Judicial Circuit Court, testified that he distributed to the magistrates a list of approved bail bondsmen compiled by the chief judge. The list, prepared and distributed on November 3, 1988, contained Walker Bonding and Thomas May. The evidence, however, showed that the list used by Magistrate Eplin was dated November 23, 1987, and did not contain Mr. May's name. Magistrate Eplin testified that he never received the updated list. His

testimony was corroborated by Magistrate John McCallister, who also testified that he did not receive the November 3, 1988, list of approved bail bondsmen.

5. West Virginia Code § 51–10–6 (1959) mandates the posting of authorized bondsmen in a "conspicuous place" in every magistrate court in each county.

ated by the chief judge of Cabell County and distributed by the trial court administrator, Ralph Roberts. However, it was also evident that at least one other magistrate, in addition to Magistrate Eplin, had failed to receive the most current list. Consequently, the evidence does not support a finding, based upon the clear and convincing evidence standard, that the magistrate violated Canon 3A (1) and (5).

Further, while Mrs. Walker testified that Magistrate Eplin had told her to take care of the charges that Mr. May had brought against him or she would not be permitted to sign any more bonds in his court, there was no other evidence to support this accusation. Magistrate Eplin contradicted her testimony when he testified that it was Mrs. Walker's husband who indicated to him that he would get the charges dismissed. Perhaps most significant, Mrs. Walker's own testimony reflects that subsequent to the incident involving Mr. May, she signed at least three bonds before Magistrate Eplin.

Based upon the foregoing opinion, the recommendation of the Judicial Hearing Board is affirmed and the complaint in this matter is hereby dismissed.

Complaint dismissed.