118 N.J. Super. 361 (1971)
287 A.2d 482
ACOUSTICS, INC., PLAINTIFF,
v.
THE HANOVER INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 21, 1971.
*363 Mr. Ralph A. Yacavino for plaintiff.
Mr. Anthony J. LaRusso for defendant (Messrs. Lindabury, McCormick & Estabrook, attorneys).
WALSH, J.D.C. (temporarily assigned).
The facts leading to the present controversy reveal that on November 4, 1968 Arnold Walter Nursing Home (Walter) entered into a contract with Russdick Construction Corporation (Russdick) for the construction of a nursing home. Under the terms of the contract Russdick agreed to furnish an FHA payment bond in the amount of $537,532.00, which also was executed on November 4, 1968. Under the terms of the bond Russdick appeared as principal, defendant as surety, Walter as owner-obligee and Ridgewood Savings Bank as lender-obligee. Among the specifications accompanying the contract were provisions calling for the installation of acoustical ceilings in certain areas of the nursing home. On or about October *364 27, 1969 plaintiff and Russdick entered into a contract whereby plaintiff agreed to install the acoustical ceilings at the nursing home for the sum of $9,595. They subsequently entered into three change orders providing for an additional $1,321. in extras.
Plaintiff was one of the last subcontractors to perform work at the nursing home since it was necessary to have the structure substantially completed before the acoustical ceilings were installed. Plaintiff completed the work and was paid on account $4,000, leaving an undisputed balance of $6,911.00. Russdick acknowledged its indebtedness to plaintiff in writing, and defendant sent a telegram on October 9, 1970 verifying its bond subject to the obligee's priority, the limit of liability of the bond and the two-year limitation for suits. The telegram also affirmed defendant's willingness to pay any valid claim for labor and material furnished by a subcontractor. On or about November 5, 1970 Russdick and Walter filed petitions under chapter 11 of the Bankruptcy Act. Plaintiff now seeks the balance of its money from defendant surety.
The applicable law governing plaintiff's claim is summarized in Graybar Electric Co. v. Continental Cas. Co., 50 N.J. Super. 289 (App. Div. 1958), where the court stated:
The great weight of authority sustains the right of a person furnishing labor and materials on a private building to recover under a contractor's bond in which the owner is obligee and which is conditioned upon the payment by the contractor of all claims for labor and materials. [at 298]
Where the bond and contract refer to each other the two documents are considered to be integrated writings and must be considered together. The contract expressed the obligation of Russdick to pay for all material and equipment required for the job, and required him to furnish Walter with a payment bond known as a "contract bond-dual-obligee" which provided in part:
*365 NOW, THEREFORE, the condition of this obligation is such that, if Principal shall well and truly perform all the undertakings, covenants, terms, conditions and agreements of said Contract on its part, and fully indemnify and save harmless Obligees from all cost and damage which they may suffer by reason of failure so to do, and fully reimburse and repay Obligees all outlay and expense which Obligees may incur in making good any such default, and further, that if Principal shall pay all persons who have contracts directly with Principal for labor or materials furnished pursuant to the provisions of said Contract, failing which such persons shall have a direct right of action against Principal and Surety under this obligation, subject to Obligees' priority, then this obligation shall be null and void; otherwise it shall remain in full force and effect.
This language is similar to a provision contained in the standard form of the American Institute of Architects bond referred to in the case of Johnson Electric Co. v. Columbia Casualty Co., 101 Fla. 186, 133 So. 850, 77 A.L.R. 1 (Fla. Sup. Ct. 1931). At the time of the Johnson decision that provision had been construed in several jurisdictions as being sufficient to protect subcontractors not direct parties to the bond or the contract secured.
A review of the law indicates that plaintiff in the present situation occupies the status of a third-party beneficiary. Restatement, Security, § 165, reads:
Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons.
The primary concern of the court in ascertaining the rights of the third-party beneficiary is to ascertain the intention of the parties to the agreements out of which the alleged rights emanate. In order to examine the intent of the parties the court must look at the integrated documents and accord their language a reasonable meaning where possible, since a construction which gives the documents meaning *366 it preferable to one which leaves a portion of the agreements ambiguous. See Cooper v. Kensil, 31 N.J. Super. 87 (Ch. Div. 1954), aff'd 33 N.J. Super. 410 (App. Div. 1954).
A thorough examination of the integrated documents indicates that one of the specific intentions of the parties was to provide for payment of third-party beneficiaries supplying labor and materials to the construction job in the event Russdick failed to meet its obligations.
Turning now to the question of damages, we are faced with a more difficult problem. It is true that the parties have agreed that plaintiff has a valid claim against Russdick for $6,911. However, defendant surety contends that its obligation on the bond was conditioned by the obligee-owner paying the principal contractor all sums due and owing on the construction contract. Since the owner failed to do this, defendant claims that its obligation under the bond is discharged. This defense is based on provision 1 of the bond, which states that
The Surety shall not be liable under this Bond to the Obligees, or either of them, unless the said Obligees, or either of them, shall make payments to the Principal strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations to be performed under said Contract at the time and in the manner therein set forth.
A careful reading of the provision indicates that it only pertains to the liability of the surety to the obligees. Since plaintiff is not an obligee, this provision does not in any way affect plaintiff's claim against defendant. This conclusion is also supported by defendant's telegram of October 9, 1970, which makes no mention of plaintiff's claim being subject to provision 1 of the bond.
Defendant next argues that provision 4 of the bond required defendant's written consent to any changes in the construction where the cost thereof, when added to prior changes or alterations, caused the aggregate changes and alterations to exceed 10% of the original contract price. *367 Since the aggregate changes and alterations exceeded the contract price in excess of 100%, defendant contends that it is no longer bound by the terms of the bond, and therefore is not required to pay plaintiff.
In support of this defendant alleges that a change in the construction plans from a dry sprinkler system to a wet sprinkler system caused substantial and material changes in the installation of the acoustical ceilings which were not called for by the original contract and specifications and, therefore, plaintiff's claim is not covered by the bond.
In researching this issue the court notes that in Development Corp. of America, Inc. v. United Bonding Ins. Co., 413 F.2d 823 (5 Cir.1969), the court applied the rule adopted in Florida as follows:
a departure from a construction contract will not automatically relieve and exonerate a surety. If, however, there is a departure that results in injury to the surety, the surety will be relieved and discharged to the extent of its injury. [at 826]
A similar rationale was applied in Zuni Construction Co., Inc. v. Great American Ins. Co., 86 Nev. 364, 468 P.2d 980 (Nev. Sup. Ct. 1970) which cited as authority Restatement, Security, § 128(b), and stated:
that when the contract change results in an easily measured damage to the compensated surety so that the penalty of a total discharge of the surety would be disproportionate to the blame attaching to the creditor for the modification, the surety is discharged only to the extent of its loss. [at 982]
I feel that a similar principle of law should be adopted in the present situation since it results in substantial justice to both parties. Plaintiff should be entitled to recover for the labor and materials it furnshed under the terms of the original contract and specifications. However, defendant should not be obliged to pay for extras that exceeded the 10% limitation contained in provision 4 of the bond, unless it consented to same in writing.
*368 Plaintiff claims that the work it contracted to perform under its proposal of October 24, 1969 is the same as required under the original contract and specifications. My examination of the two documents fails to disclose any obvious similarity. This, coupled with defendant's claim that the change from a dry to a wet sprinkler system resulted in a substantial change from the acoustical work called for in the original contract and specifications, raises a question of fact as to the amount of damages that plaintiff should be entitled to recover.
Therefore, partial summary judgment shall be entered on behalf of plaintiff on the issue of defendant's liability. Plaintiff shall not be entitled to summary judgment as to the issue of damages since a question of fact exists regarding what portion of the work was performed by plaintiff pursuant to the original contract and specifications and what portion constituted extras not covered by the bond.