127 N.J. Super. 342 (1974)
317 A.2d 398
THE AMELCO WINDOW CORP., A CORPORATION, PLAINTIFF-APPELLANT,
v.
FEDERAL INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 13, 1974.
Decided March 26, 1974.
*344 Before Judges CARTON, SEIDMAN and DEMOS.
Messrs. Heller and Laiks, attorneys for appellant (Mr. Richard K. Rosenberg, of counsel and on the brief).
Mr. Louis Auerbacher, Jr., attorney for respondent.
The opinion of the court was delivered by DEMOS, J.S.C., Temporarily Assigned.
Plaintiff The Amelco Window Corp. (Amelco) instituted an action against Federal Insurance Company (Federal) to recover, as a third-party beneficiary, on a surety bond provided by Federal for a construction project. In its answer Federal denied plaintiff was within the class of persons who were entitled to protection under the bond, asserting that it had only agreed to indemnify the owner for any loss resulting from a default by the general contractor and not to secure payment to subcontractors for labor and materials.
The parties filed cross-motions for summary judgment. The court below granted Federal's motion and entered judgment in its behalf. Amelco appeals from that decision.
The facts are not materially disputed. Amelco entered into a written subcontract with Frank W. Bogert, Inc (Bogert), the general contractor, for the installation of windows and doors on a project known as "No. 1 University Plaza." Bogert had furnished a performance bond, with Federal as surety, in accord with Bogert's contract with the owner, Fairleigh Dickinson University (University). The construction contract between the University and Bogert contained the following:

7.5 PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND
The Owner shall have the right prior to signing the Contract, to require the Contractor to furnish bonds covering the faithful performance of the Contract and the payment of all ogligations [sic] arising thereunder in such form and amount as the Owner may prescribe and with such sureties as may be agreeable to the parties. If *345 such bonds are stipulated in the bidding requirements, the premiums shall be paid by the Contractor; if required subsequent to the submission of quotations or bids, the cost shall be reimbursed by the Owner. The Contractor shall deliver the required bonds to the Owner not later than the date of execution of the Contract, or if the work is commenced prior thereto in response to a notice to proceed, the Contractor shall, prior to commencement of the work, submit evidence satisfactory to the Owner that such bonds will be issued.

* * * * * * * *
Section 4:4.1. Unless otherwise specifically noted, the Contractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for the proper execution and completion of the work.
The surety agreement stated that it was "in accordance with the terms and conditions of said contract [Bogert-University] which is hereby referred to and made a part hereof as if fully set forth herein". It also stated;
NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the above bounden Principal [Bogert] shall well and truly keep, do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be by said Principal kept, done and performed at the times and in the manner in said contract specified, or shall pay over, made good and reimburse to the above named Obligee [University], all loss and damage which said Obligee must sustain by reason of failure or default on the part of said Principal so to do, then this obligation shall be null and void; otherwise shall remain in full force and effect.
A subsequent rider substituted University Plaza Realty Corporation in place of University as obligee. The substitution has no effect upon this controversy.
Bogert went into bankruptcy before the building was completed, thereby creating a default under its contract with the University.
The essential issue involved here is whether a subcontractor may avail itself of a surety bond conditioned for the faithful performance by the principal of a prime construction contract containing no express provision for payment of unpaid claims of subcontractors, where the general contract requires the principal to pay all claims for labor and materials. Appellants' *346 position is grounded upon the fact that the surety bond and the construction contract are expressly integrated and therefore recovery is permitted under the bond for its unpaid claim.
There is no dispute that the execution of the bond in question established a suretyship, with Bogert as the principal, Federal as the surety and University (later replaced by University Plaza Realty Corporation) as the obligee.
Suretyship is a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default or miscarriage of another, the principal. While the contract of a surety is, in a sense, accessory or collateral to a valid principal obligation contracted by another person, either contemporaneously or previously, his obligation to the creditor or promisee of the principal is direct, primary and absolute. The surety contract is not that the obligee will see to it that the principal pays the debt or fulfills the contract, but rather that the surety will see that the principal pays or performs. 50 Am. Jur., Suretyship, § 2 at 903-904.
Surety bonds are commonly used in construction projects. Accordingly, our courts have been presented with situations involving the surety relationship and the rights, duties and liabilities flowing therefrom. While no previous reported decision in our courts meets the precise issue presented in the matter before us, several principles have been enunciated which control its disposition.
Before considering these decisions it is helpful to acknowledge some general points set forth in 4 Corbin on Contracts, § 798 at 162-164 (1951). Therein it is stated that a third party to a surety agreement need not stand in "privity" with the contracting parties. He need not be a "promisee" or give consideration in order to become a beneficiary under the surety agreement. The law recognizes that the third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. If there is such a promissory expression, there *347 need be no discussion of "intention to benefit." These points are cited with approval in Schlanger v. Federal Ins. Co., 44 N.J. 17, 20 (1965).
Supported by these principles is the doctrine that where, as here the surety bond incorporates the prime construction contract by reference, the two, being integrated, must be considered together. Graybar Electric Co. v. Continental Cas. Co., 50 N.J. Super. 289, 295 (App. Div. 1958); Acoustics, Inc. v. Hanover Ins. Co., 118 N.J. Super 361, 364 (Law Div. 1971). Therefore a surety bond that is conditioned on full performance of his contract by the principal will operate in favor of such third parties as the principal, by his contract with the promisee, undertakes to pay. The bond need not be more specific. 4 Corbin on Contracts, supra. § 799 at 168.
In the prime contract Bogert was obligated to pay his subcontractors as a condition of his full contractual performance. Bogert was further required to provide and pay for all labor and materials needed for the full completion of the work. These duties are not disputed. Consequently, the bonds recital that it is "conditioned" [construed as "promised," Schlanger v. Federal Ins. Co., supra] that Bogert would "well and truly keep, do and perform each and every, all and singular, the matters and things in said contract," is interpreted to mean that it secured the payment of those subcontractors supplying Bogert with materials or labor as an element of the performance of his contract with University.
Federal argues that since the prime contract gave the University the right to require bonds "covering the faithful performance of the contract and the payment of all obligations," and since only a "Performance Bond" was executed, plaintiff as a third party is precluded from holding it liable. The argument does not reach the question. We must consider what the executed bond provided.
Our courts have adopted Restatement, Security, § 165, which provides:
*348 Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons. [Emphasis supplied]
See Graybar Electric Co. v. Continental Cas. Co.; supra, 50 N.J. Super. at 295; Acoustics, Inc. v. Hanover Ins. Co., supra, 118 N.J. Super. at 365.
A consideration of the two illustrations appended to the section is helpful.
1. The A Construction Company contracts with the city of X for the building of a retaining wall in a park. In the construction contract the company makes no promise to the city to pay laborers and materialmen. In connection with the contract, the company furnishes the obligation of S, a surety, in the penal sum of $10,000 guaranteeing that the company will satisfactorily complete the work and will pay all valid claims for labor and materials. S is liable to unpaid laborers, materialmen, and subcontractors.
2. Same facts as Illustration 1, except that the company promises the city it will pay laborers and materialmen. S guarantees that the company will perform its contract, without specially mentioning the various promises and duties of the company. S is liable to unpaid laborers, materialmen, and subcontractors.
In the present case it is clear that the bond does not expressly exclude subcontractors furnishing materials and labor from its purview. Therefore, defendant is not entitled to exclude plaintiff as a person who may benefit thereunder.
Further, the finding of the court below that the bond only provided the University with indemnity against loss and did not extend to third parties is in error. The bond not only held the University harmless against loss but it also secured performance by Bogert. It was not, therefore, merely an indemnity contract. See Royal Indem. Co. v. Alexander Industries, Inc., 211 A.2d 919 (Del. Sup. Ct. 1965).
Federal also contends that section 5.4.1 of the prime contract affords it a complete defense to plaintiff's claim. The pertinent part of the section states:
*349 The Contractor shall pay each Subcontractor, upon receipt of payments from the Owner, an amount equal to the percentage of completion allowed to the contractor on account of such Subcontractors work.
The provision is capable of two constructions. A strict construction would insulate defendant from liability, since the subcontractor's right to be paid would be contingent upon the contractor being paid, which in this case was not done because he entered bankruptcy before the job was completed. The other view would hold that the section means no more than that the subcontractor could not accelerate payments.
Consideration must be given to (1) as a matter of policy, the law favors materialmen and laborers, and (2) a fair reading of the prime contract could "lull" them into the conclusion that it was unnecessary to comply with the terms of the Mechanics Lien Law (N.J.S.A. 2A:44-64 et seq.) in order to be assured payment for services. See Schlanger v. Federal Ins. Co., supra. Hence, the broader construction of the provision is the more appropriate and effectuates a more just result.
In Royal Indem. Co. v. Alexander Industries, Inc., supra, the owner contracted with Construction Unlimited, Inc. to erect certain buildings. The contract provided that (1) Construction would furnish everything necessary to build the structure, and (2) Alexander could request Construction to secure a labor and material payment bond. A "contract bond" was executed with appellant as surety. It incorporated the construction contract by reference, and in language essentially identical to the clause appearing in the bond before us it stated that it secured performance of the construction agreement. It also assured Alexander that it would bear no loss from a breach by Construction.
Burger Acoustical Co., Inc., performed its subcontract with Construction, and not having received payment brought an action against the surety, during which it moved for and was granted summary judgment.
*350 The court stated that a surety bond will not be construed strictly in favor of a paid surety and the bond and the contract should be read together since the former incorporated the latter by reference. It disagreed with the surety's argument that the bond was purely an "indemnity" agreement, holding that it also secured performance of the construction contract. The court concluded that the matter was controlled by Restatement, Security, § 165. In affirming the court below, it held that Burger was a third-party beneficiary under the bond, by virtue of the incorporated construction contract. See also, Westinghouse Electric Corp. v. Mill Elevator Co., 254 Iowa 874, 118 N.W. 2d 528 (1963).
On the basis of the foregoing we hold Amelco to be a third party beneficiary under the bond and it may properly proceed against the surety for any unpaid balance due under its subcontract with Bogert. Accordingly, the determination of the court below is reversed.
The affidavits filed in support of the cross-motions for summary judgment indicate a dispute existing between the parties as to the amount of Amelco's claim which remains to be resolved. Therefore, the matter is remanded for further proceedings, consistent with this opinion.