156 N.J. Super. 327 (1978)
383 A.2d 1163
UNIVERSAL SUPPLY COMPANY, PLAINTIFF-RESPONDENT,
v.
MARTELL CONSTRUCTION COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1978.
Decided February 17, 1978.
*329 Before Judges HALPERN, LARNER and KING.
Mr. Walter J. Ray argued the cause for defendant-appellant (Messrs. Masten and Ray, attorneys).
Mr. Louis J. Greco argued the cause for plaintiff-respondent (Messrs. Donio, De Marco & Greco, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiff Universal Supply Company (Universal) furnished materials to Monroe Bonded Roofers (Monroe), a subcontractor in connection with a construction project of the State of New Jersey. When Monroe defaulted *330 in payment, Universal instituted an action against Monroe and Martell Construction Company, Inc. (Martell), the prime contractor. The complaint was voluntarily dismissed as against Monroe and the litigation continued against Martell only.
Plaintiff's action against Martell was founded upon a two-pronged basis: (1) on the payment bond filed pursuant to the Public Works Bond Act (N.J.S.A. 2A:44-143 to 147), and (2) liability arising out of the Trust Fund Act (N.J.S.A. 2A:44-148).[1]
Concededly, plaintiff failed to comply with the notice and suit limitations of the Bond Act and is therefore barred from recovery thereunder. The appellate issue is thus limited to the construction and scope of the Trust Fund Act and the right of plaintiff to recover against the prime contractor thereunder.
On cross-motions for summary judgment the trial judge concluded that the Trust Fund Act (N.J.S.A. 2A:44-148) was controlling and dispositive in that it imposed an obligation upon Martell to hold moneys received from the State in trust for the benefit of Universal by virtue of a duty to "insure that all claims in connection with the performance of the public works contract be paid." Summary judgment was therefore entered in favor of Universal against Martell for the full amount of the claim. Martell appeals therefrom.
The operative facts are undisputed and uncomplicated. Martell as the prime contractor of the State of New Jersey completed the construction project and received payment from the State pursuant to its contract. It in turn paid its subcontractors in full, including Monroe. Monroe, however, failed to pay its indebtedness to Universal for roofing materials which were utilized in performance of Monroe's subcontract on the project. Officers of Universal contacted Martell *331 on several occasions complaining that Monroe had not paid its indebtedness, and Martell responded that it "would take care of things and that (Universal) would be paid." This was followed up by Martell notifying Monroe and requesting that it pay the Universal obligation. Nevertheless, Monroe failed to do so.
The prime thrust of appellant's argument to the trial judge and on appeal is that the admitted noncompliance with the rigid requirements of the Bond Act precludes recovery under the Trust Fund Act. It is asserted that the two statutes should be read as one and that notice within 80 days and institution of suit within one year, as mandated by N.J.S.A. 2A:44-146, is a sine qua non for recovery under the Trust Fund Act. N.J.S.A. 2A:44-148.
This suggestion is clearly without merit. Although the Band Act and the Trust Fund Act are related pieces of legislation designed to grant protection to contractors, laborers and materialmen engaged in the performance of public works projects, they are totally dissimilar in scope and effect. There is no rational basis for superimposing the procedural underpinnings for recovery on a payment bond to the other act which simply provides that the moneys paid by the State to its prime contractor shall constitute a trust fund in the hands of such contractor.
Nothing either express or implied in the Trust Fund Act leads to the conclusion urged by appellant. And conversely, N.J.S.A. 2A:44-146 clearly states that its notice and limitations provisions are confined to an action on the bond required by Article 12, which is entitled "Bonds of Contractors on Public Works and Improvements" N.J.S.A. 2A:44-143 to 147. The Trust Fund Act, N.J.S.A. 2A:44-148, was enacted in 1932, many years after the adoption of the Bond Act, and is designated as Article 13 of Chapter 44, which chapter encompasses all types of liens and devices to secure payment of artisans and contractors engaged in private and public works. N.J.S.A. 2A:44-1 et seq. *332 Procedurally, the Bond Act and Trust Fund Act have no common relationship with each other.
Although we disagree with the major thesis of defendant's appellate argument, nevertheless we conclude that the judgment in favor of plaintiff must be reversed on a more fundamental and substantive ground pertaining to the scope and meaning of the Trust Fund Act.
The Trust Fund Act provides:
All money paid by the state of New Jersey or by any agency, commission or department thereof, or by any county, municipality or school district in the state, to any person pursuant to the provisions of any contract for any public improvement made between any such person and the state or any agency, commission or department thereof, or any county, municipality or school district in the state, shall constitute a trust fund in the hands of such persons as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid. [N.J.S.A. 2A:44-148]
The tenor of this legislation and the companion statute establishing criminal sanctions (N.J.S.A. 2A:102-12) is that the money paid by the public agency to the prime contractor constitutes a trust fund for the protection and benefit of all those who have claims for "labor, material and other charges" against that prime contractor in connection with the performance of its contract. By the creation of such a trust fund the statute inhibits the allocation of such moneys for other purposes to the detriment of legitimate claimants who have contributed to the prime contractor's performance of its contract with the governmental agency.
The ambit of protection, however, is limited to those who have furnished labor or material to the project through direct contract with the prime contractor. Contrasted from the Bond Act, the Trust Fund Act does not extend its benefits to those who have furnished labor or materials for the project through contract with any subcontractors down the ladder. As a corollary, unlike the Bond Act, it does not make the prime contractor a guarantor of payment for labor *333 or materials furnished to its subcontractor. The trial judge's finding to that effect is erroneous, for the Trust Fund Act does not create a guarantee of payment at all. It only provides that the funds in the hands of the prime contractor constitute a trust fund to inhibit their diversion for purposes unconnected with the public project. See Hiller & Skoglund, Inc. v. Atlantic Creosoting Co., Inc., 40 N.J. 6, 21 (1963); Key Agency v. Continental Cas. Co., 31 N.J. 98, 108-109 (1959); Stulz-Sickles Co. v. Fredburn Const. Corp., 114 N.J. Eq. 475, 478 (Ch. 1933).
As long as the prime contractor, Martell, paid in full all the materialmen and subcontractors who were in a direct contractual relationship with it, Martell fulfilled its trust obligations under the Trust Fund Act and had no legal duty to satisfy a claimant who furnished materials to Martell's subcontractor.
In Fidelity & Deposit Co. of Md. v. McClintic-Marshall Corp., 115 N.J. Eq. 470 (Ch. 1934), aff'd o.b. 117 N.J. Eq. 440 (E. & A. (1935)), the court discussed the scope and effect of the Trust Fund Act which had been enacted two years before. It noted:
Chapter 268 [Laws of 1932; N.J.S.A. 2A:44-148] creates an equitable lien to secure claims for labor, materials, etc., and leaves the residuary title in the contractor. The important question is, what claims are secured? It is urged on the one hand that the phrase "all claims for labor, materials and other charges incurred in connection with the performance of said contract," should be construed to mean all claims incurred by the contractor or any subcontractor and it is argued on the other hand that the only claims secured are those incurred by the contractor himself. The first construction would make the contractor's property liable for the debt of another. The legislative purpose, to have this effect, must be plainly expressed and not depend on implication. The phraseology of the statute may be contrasted with that of our other laws dealing with the same general subject, the Mechanics' Lien act, section 3, the Municipal Mechanics' Lien act, section 1, and the Bond Act of 1918. These statutes leave nothing to implication but plainly express a purpose to make the contractor or his property, the contract price, liable not only for his own debts but for the debts of subcontractors.... The present act adds the lien on the money *334 after it reaches the contractor's hands, but it requires no notices to be filed and contains no limitation of the time during which the fund is subject to claims. Chapter 269 forbids the contractor from using the money except for the payment of claims. Must he hold the fund intact until some statute of limitations shall have run, or can he never spend his profits? Of course, he is presumed to know what debts he himself owes, but how can he know with certainty what debts are owed by his subcontractors and by others even more remote in the contract chain? The purpose of the legislature in this enactment was, I think, to re-enforce the bond required by the act of 1918 and also to give security to those who dealt directly with the contractor and who failed to proceed under the act of 1918. The claims to secure which the trust is created, should be construed to mean claims on which the contractor is liable by reason either of his promise to pay or else of action taken under the act of 1918.
Again, the fund is a trust fund in the contractor's hands but not in the hands of the subcontractor, since the latter has no contract with the highway department. To parties who furnish labor or materials to subcontractors but who fail to proceed under the 1918 law, no equitable lien is given. [115 N.J. Eq. at 476-477]
See also, Sylvester v. Giovannone, 116 N.J. Eq. 515, 517-518 (Ch. 1934).
It is thus evident that one who furnishes labor or materials to a subcontractor on a public project and not to the prime contractor must seek relief through a suit on the payment bond, the form of which expressly provides that it is for "the benefit of any subcontractor, materialman, laborer, person, firm or corporation having a just claim" and is conditioned upon the payment of all such claims for labor, materials or supplies furnished, used or consumed in the performance or completion of the contract. See N.J.S.A. 2A:44-147. The Bond Act creates an absolute liability on the part of the prime contractor for the benefit of all subcontractors and their suppliers who furnish labor or material for the project no matter how far removed they may be from a contractual relationship with the prime contractor.[2]Hiller & *335 Skoglund, Inc. v. Atlantic Creosoting Co., Inc., supra, 40 N.J. at 14; First-Mechanics v. N.J. Brick Co., 112 N.J.L. 218, 221 (Sup. Ct. 1934); N.A.K. Bugbee & Co., Inc. v. Consolidated Indem. & Ins. Co., 111 N.J.L. 323 (E. & A. 1933). The Trust Fund Act, on the other hand, protects only those who have a direct contractual relationship with the prime or general contractor.
The language of the two statutes also points up this distinction. N.J.S.A. 2A:44-143 explicitly establishes the obligation of the prime contractor to furnish a payment bond which absolutely guarantees payment by him and "all subcontractors" for labor or material furnished for the project. The Trust Fund Act on the other hand contains no such express provision and provides for the existence of the trust fund only until the claims "incurred in connection with the performance of such contract shall have been fully paid." Such contract refers to the contract described earlier in the statute as the one "made between any such person and the state. * * *"
As the court observed in Fidelity & Deposit Co. of Md. v. McClintic-Marshall Corp., supra, a more expansive construction of legislative purpose will not be implied without a clear expression in the language of the legislation. The rationale articulated by Judge Bigelow in Fidelity & Deposit Co. fully justifies a construction limiting the ambit of availability of the trust fund to those having a direct relationship with the prime contractor.
In the absence of a right created by statute, plaintiff has no lien, legal or equitable, on the fund representing the price of the contract between Martell and the State of New Jersey, and thus has no valid claim against Martell. See Wasserman v. Klahre, 24 N.J. Super. 143, 146 (App. Div. 1952).
Accordingly, it is ordered that the judgment in favor of plaintiff is reversed and set aside and that judgment is entered in favor of defendant.
NOTES
[1] Incorrectly designated as 2A:44-147 in New Jersey Statutes Annotated.
[2] The Bond Act does not extend its benefits, however, to a supplier of material to a materialman. See Morris Co. Industrial Park v. Thomas Nicol Co., 35 N.J. 522 (1961).