254 N.J. Super. 445 (1992)
603 A.2d 976
RIBEIRA & LOURENCO CONCRETE CONSTRUCTION, PLAINTIFF,
v.
JACKSON HEALTH CARE ASSOCIATES, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT. JOHN J. MICHAELS DEVELOPERS, INC.; MICHAEL CASTORO; GREEN CAST ENTERPRISES, INC.; CONDOR COMPANY, INC., AND HOWARD LOWY, DEFENDANTS,
v.
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, DEFENDANT AND THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1992.
Decided March 4, 1992.
*446 Before Judges MICHELS, HAVEY and CONLEY.
David L. Harris argued the cause for appellant Jackson Health Care Associates (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; David L. Harris, of counsel; David L. Harris and Arthur L. Saiewitz, on the brief).
Peter V. Koenig argued the cause for respondent Indemnity Insurance Company of North America (Napodano & Raffo, attorneys; Peter V. Koenig, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*447 Defendant and third-party plaintiff Jackson Health Care Associates (Jackson) appeals from a summary judgment of the Law Division entered in favor of defendant and third-party plaintiff Indemnity Insurance Company of North America (North America) that dismissed all of its claims under a labor and material payment bond. The pivotal issue raised by this appeal is whether an obligee under a labor and material payment bond, such as Jackson, has a right of recovery against its surety North America, and, if so, whether the contractual limitation period for bringing suit would bar such recovery.
Many of the facts giving rise to this appeal are set forth in our opinion in Ribeira & Lourenco v. Jackson Health, 231 N.J. Super. 16, 20-21, 554 A.2d 1350 (App.Div. 1989), aff'd o.b., 118 N.J. 419, 571 A.2d 1311 (1990), and were relied upon here by both parties. These facts need not be repeated at length here. It is sufficient for purposes of this appeal to emphasize that North America is the surety on both a performance bond and a labor and material payment bond. The performance bond, which was satisfied by North America, named Jackson, as obligee, and named defendant Green Cast Enterprises, Inc. (Green Cast), as principal, and guaranteed that the principal would complete the contract. When the contract was not completed, North America paid Jackson under the performance bond. The labor and material payment bond guaranteed claims for labor and materials used in the performance of a subcontract between defendants John J. Michaels Developers, Inc. (Michaels) and Green Cast. The labor and material payment bond named Green Cast, as principal, and Jackson, as obligee.
Green Cast defaulted on the subcontract and ceased work on the project on February 13, 1985. As a result, on August 11, 1985, plaintiff instituted an action against Jackson, Michaels, Green Cast and defendants Condor Company, Inc. and Howard Lowy to recover the unpaid balance due for labor performed and materials furnished in connection with the construction *448 project. On September 9, 1986, Jackson filed an answer and third-party complaint, joining North America as a third-party defendant, seeking to recover additional monies from North America under the labor and material payment bond. In the third-party complaint, Jackson sought recovery and indemnity under the labor and material payment bond, claiming that it was entitled to recover under the bond "any and all sums which claimant [plaintiff] recovers against [it]", as well as all sums it "paid or will pay for labor and materials" to claimants and all costs, expenses and attorney's fees. On October 20, 1986, plaintiff amended its complaint to include a direct claim against North America, as surety for Green Cast on the labor and material payment bond. After the trial court denied North America's motion to dismiss the third-party complaint, the trial court severed the trial of Jackson's third-party complaint against North America from the trial of plaintiff's claims.
After completion of discovery, North America moved for summary judgment against plaintiff on the ground that the action against it was barred by the provisions of the bond that limited the time in which to bring suit to one year after the principal had ceased work on the project. The trial court held that the time limitation provisions of the bond were valid and enforceable. Since Green Cast, the principal, ceased work on the project on February 13, 1985, and plaintiff did not commence suit against North America, the surety, until October 20, 1986, more than one year later, the trial court further held that plaintiff was barred from bringing the suit and entered summary judgment in favor of North America. We affirmed the judgment, holding that the one-year limitation period in the labor and material payment bond precluded the action against the surety and that the surety was not equitably estopped from raising the limitation period in the bond as a defense. We also held that the claim against the surety in the amended complaint did not relate back to the date of filing the original complaint. The Supreme Court affirmed o.b. in 118 N.J. 419, 571 A.2d 1311 (1990).
*449 Thereafter, on December 4, 1990, North America moved for summary judgment with respect to the third-party complaint, arguing that the judgment in Ribeira & Lourenco v. Jackson Health, supra, was res judicata as to Jackson's third-party claim against it and barred this action. Additionally, North America argued that its sole obligation under the labor and material payment bond "was to pay claimants who complied with the conditions of the bonds," and that Jackson was not a claimant as that term is defined by the bond. Jackson, in opposing the motion, admitted that "[t]he time is past for [claimants] now to bring suit against [North America]", but argued that its rights, as an obligee under the bond, were "not addressed in the bonds" and, thus, were not affected by the one-year limitation for bringing suit contained in the labor and material payment bond. Judge Longhi in the Law Division granted summary judgment in favor of North America and dismissed all claims by Jackson under the labor and material payment bond. The trial court held that Jackson, as obligee, stood in no better position than the third-party beneficiaries stood and, since the bond contained a limitation for bringing suit within one year, it, as obligee, was bound by that limitation and, therefore, this action against North America was time-barred.
Jackson contends on this appeal that the trial court erred "by extending limitations of suit expressly applicable to defined `claimants' to the owner/obligee on a labor and material payment bond." Essentially, Jackson argues that the terms of the payment bond, which limit actions to "claimants" do not apply to it as an obligee and that its "right to sue is not derived from, nor solely dependent upon, a claimant's rights or obligations under the bond." We disagree and affirm. We are satisfied from our study of the record and arguments presented that the trial court properly granted summary judgment in favor of North America and that all of the issues raised are clearly without merit. R. 2:11-3(e)(1)(E).
*450 North America issued both a performance bond and a labor and material payment bond, naming Jackson as obligee in each. North America, as surety, was bound under each bond for $800,000. The other surety on the bond, Union Indemnity Co. of New York, was bound for $2,500,000 and has subsequently become insolvent. North America tendered the full payment of its obligation  $800,000  to Jackson under the performance bond. Jackson accepted the payment and released North America. Under the labor and material payment bond, North America, as surety, was bound to Jackson "for the use and benefit of claimants, as hereinbelow defined...." The pertinent provisions of the labor and material payment bond read as follows:
1. A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.
2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or unperformed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.
3. No suit or action shall be commenced hereunder by any claimant:
a. Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the material for which said claim is made....
b. After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.
In view of the clear and unambiguous provisions of the bond, particularly Paragraph 3, the trial court correctly held that Jackson was time-barred from suing North America on the labor and material payment bond and, therefore, properly *451 granted summary judgment in favor of North America. See Ribeira & Lourenco, supra, 231 N.J. Super. at 22, 554 A.2d 1350.
Beyond this, we are satisfied that Jackson has no legal basis for recovering under the payment bond because it is not a claimant as that term is defined by the bond. It is undisputed that Jackson was the obligee under the payment bond. An obligee is not a claimant as defined in the payment bond. Jackson did not have a direct claim for labor and material against Green Cast, the principal, under the payment bond. It is fundamental that a performance bond and a labor and material payment bond are two distinct bonds, each giving rise to different contractual rights and obligations.
Generally speaking, contractors' bonds are of two types, sometimes combined in a single bond: performance bonds and labor and material payment bonds. A performance bond guarantees that the contractor will perform the contract, and usually provides that, if the contractor defaults and fails to complete the contract, the surety can itself complete the contract or pay damages up to the limit of the bond. A labor and material payment bond guarantees the owner that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults. The purpose of a payment bond or provision is to protect the equity of the owner and his property against the claims of unpaid subcontractors or suppliers. [17 Am.Jur.2d Contractors' Bonds § 1 (1990) at 747 (footnotes omitted)].
See Middle-West Concrete v. General Ins. Co., 165 W. Va. 280, 282-84, 267 S.E.2d 742, 744-45 (W. Va. 1980); Standard Accident Ins. Co. v. Rose, 314 Ky. 233, 238, 234 S.W.2d 728, 730-31 (1950) (interpreting language in bonds practically identical to the payment bond involved here).
Generally, an obligee under a labor and material payment bond is not entitled to payments for labor and material paid by the obligee who completes the contract after the contractor's default. 13 Couch, Cyclopedia of Insurance Law 2d § 47:232 (1982) at 373 (hereinafter Couch); 17 Am.Jur.2d Contractors' Bonds, § 5 (1990) at 750; see e.g., Southwood Builders v. Peerless Ins. Co., 235 Va. 164, 172, 366 S.E.2d 104, 109 (Va. 1988). As Couch explained in § 47:231 of his Cyclopedia of Insurance Law, supra:

*452 While an obligee has a right of action on a dual-purpose bond with respect to the harm sustained by him through a breach of the contract, he has no right thereon with respect to the claims of labor and materialmen, unless, through payment, he has become subrogated to their claims. So a contractor's bond by which the surety engages to indemnify the owner from all costs and damages he may suffer by reason of the failure of the contractor faithfully to perform his contract and to satisfy all claims and demands incurred in performing the contract, and to pay all persons who shall furnish the contractor with labor and materials, gives the owner no right of recovery on his own behalf against the surety on account of materialmen's claims unless and until he has actually suffered damages by being compelled to pay them.
For example, where a payment bond is conditioned on the contractor making prompt payments to labor and material claimants, but a claimant who is not paid files a mechanic's lien attaching to the owner's property, the bond implies an obligation on the part of the surety to indemnify the owner so that the property will be free of the lien. [Couch, supra, § 47:231 at 373 (footnotes omitted)].
And Couch further explained in § 47:232:
With respect to the claims of labor and materialmen, it is immaterial that the principal contractor has defaulted and that the obligee is completing the performance of the contract. Accordingly, the surety of the defaulting contractor is liable for materials which the contractor had purchased and which were used by the obligee in completing the contract after such default.

To be distinguished from the case in which the claim is asserted by the labor and materialman is the question whether the obligee is entitled to payment for the amounts paid by him. With respect to this point it is held that since a labor and material bond is limited in coverage to the protection of labor and materialmen, it by definition does not indemnify the obligee with respect to labor and materials used by the obligee in completing the contract after the contractor's default. Consequently, where a performance bond and a labor and material payment bond were executed and the contractor after running into financial difficulties ceased work on two houses and abandoned the contracts and the surety paid the amount of the performance bond, it was held liable on its labor and material payment bond only for labor and material used on the building for which the contractor had failed to pay and was held not liable for the materials and labor reasonably required to complete the contract, it being pointed out that the object of the labor and material payment bond was to protect the owner against mechanics' liens. Furthermore, this conclusion is not altered by the fact that the labor and material bond refers to "all labor and material used or reasonably required for use in the performance of the contract," since such words are not intended to extend the coverage to protect the obligee of the performance bond, but only to protect the surety against extravagant and unnecessary use of labor and materials on the part of *453 the contractor or the claimant. [Couch, supra, § 47:232, at 373-74 (footnotes omitted; emphasis added)].
And, finally Couch explained in § 47:233:
The obligee may be entitled, by way of subrogation, to assert against the surety the claim paid by him. For example, where a contractor purchases material and supplies from a subcontractor who, in consideration of forgoing the right to file a mechanic's lien, is promised by the owner payment for the material, the owner, after payment of the material contracted for, has a right of action on the contractor's surety bond. [Couch, supra, § 47:233 at 374 (footnotes omitted)].
As noted, the situation is slightly different when an unpaid claimant files a mechanic's lien on the obligee's property. Couch, supra, § 47:231 at 373; 17 Am.Jur.2d Contractors' Bonds, supra, § 13 at 754-55.
In some cases, owners of buildings under construction have paid or agreed to pay laborers or materialmen the amounts owed to them by general contractors for labor or material furnished for use in the buildings, in order to avoid the placing of mechanics' liens on the property. It has been held that where a surety on a contractor's bond would be liable to the owner if a mechanic's lien were perfected on the property, and the owner makes payment to materialmen or laborers in order to avoid the placing of a mechanic's lien on the property, the owner may recover the amount paid from the surety.
Liability for loss arising from payment of mechanics' liens falls within the purview of a bond conditioned to hold the obligee harmless for any breach of contract. However, it has also been held that an owner who refuses to pay a general contractor for materials and labor furnished to him, and insists on paying materialmen directly to avoid any possible filing of mechanics' liens, releases the contractor's surety from liability on the contractor's bond.
A surety on a contractor's bond is not liable for payments made to materialmen where no valid lien could have been asserted against the property.
* * * * * * * *
Also, a payment bond conditioned on the contractor making prompt payments to labor and material claimants has been held to imply an obligation on the part of the surety to indemnify the owner when an unpaid claimant files a mechanic's lien attaching to the owner's property so that the property will be free of the lien. [17 Am.Jur.2d, Contractors' Bonds, supra, § 13 at 754-55 (footnotes omitted)].
Thus, as Couch clearly explains, the labor and material payment bond by definition did not indemnify Jackson with respect to labor and materials used by it in completing the contract after the contractor went into default. Couch, supra, § 47:323 at 374. In our view, the labor and material payment bond *454 should not "be construed so as to extend liability beyond the terms of the contract, or so as to nullify the plain intention of the parties." 74 Am.Jur.2d Suretyship § 257 (1974) at 170 (footnote omitted). By the plain terms of the bond, the parties limited actions on the payment bond to certain defined "claimants," whose claims were to be filed within a specified time period. The payment bond was created to make monies available for, and give a direct claim of action to, the labor and materialmen who had a direct contract with the principal or its subcontractor. Thus, the payment bond protects the owner from liens being attached to its property. The performance bond, on the other hand, was created to provide the owner with funds necessary to complete the project upon the default of the principal contractor. See 17 Am.Jur.2d Contractors' Bonds § 1 at 747; General Ins. Co., supra, 165 W. Va. at 282-84, 267 S.E.2d at 744-45; Standard Accident, supra, 314 Ky. at 238, 234 S.W.2d at 730-31.
Jackson, as obligee, was not a claimant as defined by the payment bond and, therefore, had no contractual right to assert a claim under that bond against North America. Moreover, Jackson has not alleged that liens have been filed against, or attached to, its property. Thus, to permit Jackson to recover on the labor and material payment bond would be contrary to, and would defeat the purpose of, the bond.
The result reached here is supported by Southwood Builders v. Peerless Ins. Co., 235 Va. 164, 366 S.E.2d 104 (Va. 1988). There, the Virginia Supreme Court was asked to consider, in part, whether a lower court properly concluded that Southwood, as Principal/General Contractor, "was not a proper claimant under the payment bond and that, even if it was a proper claimant, the claim was barred by the statute of limitations." Id. at 165, 366 S.E.2d at 105. Southwood had entered into a general contract with the local county government to construct the county courts and office building. Southwood then subcontracted some of the work to United Drywall and Plastering Co. As part of the subcontract, United was required to provide both *455 an 100% performance and 100% payment bond payable to the contractor. The language of these bonds is virtually identical to North America's bond.
Sometime after the project had started, United encountered financial difficulties:
instead of terminating United, notifying Peerless [surety], and taking over the work, [Southwood] proposed a deal to United: If United would add another crew, Southwood would pay for that crew and for all additional materials ordered by United for the job. This arrangement was made known neither to Peerless nor to the architects. The plan was that the monies paid by Southwood on United's behalf would be deducted from United's progress payments. [Id. at 167, 366 S.E.2d at 105-06].
Despite this agreement, United later defaulted on the contract. Id. at 167, 366 S.E.2d at 106. The Virginia Supreme Court reasoned:
We turn now to the issue concerning Peerless' liability under the labor and materials payment bond. United stopped work on December 4, 1981. Southwood's suit under the payment bond was filed on March 10, 1983. The payment bond contained this provision: "No suit or action shall be commenced hereunder by a claimant, (a) after the expiration of one (1) year following the date on which Principal ceased work on said subcontract...." United was the principal. Under the language of the bond itself, Southwood's suit against Peerless was plainly time-barred.

* * * * * * * *
Under Southwood's reasoning, because it took over the job and furnished labor and materials through March 26, 1982, its suit was timely. By Southwood's approach, the date the principal under the bond stopped work has no bearing whatever on the statute of limitations question in cases where work on the defaulted project is continued by others.
Southwood's approach is without merit. First, the statute and the bond are to be read together. See Thomas Somerville Co. v. Broyhill, 200 Va. 358, 105 S.E.2d 824 (1958). The more restrictive language of the bond does not conflict with the statute and thus should be given full effect.
Second, Peerless gave a bond based on United's participation in the project. Once United defaulted, that bond could not, without Peerless' consent, simply be read to include the entity which took over United's work.
Third, the payment bond was designed to protect a claimant as defined in the bond, which included only those having "a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract." Southwood had no such relationship with United. Southwood was United's general contractor. Southwood did not supply labor or materials to United. In essence, Southwood lent money to United which United used to pay for labor and materials.

*456 We hold that the trial court did not err in concluding that Southwood's claim under the labor and material payments bond was barred by the applicable statute of limitations. [Id. at 171-72, 366 S.E.2d at 108-09 (Emphasis added)].
Finally, we point out that Hayle Floor Covering, Inc. v. First Minnesota Constr., 253 N.W.2d 809 (Minn. 1977), relied upon by Jackson, is factually distinguishable and does not support a different result. Hayle involved an unique fact pattern not present here; namely, that the subcontractor had instituted a mechanic's lien foreclosure action against the owner of the construction project and held a valid lien against the property. When an unpaid claimant files a mechanic's lien "the bond implies an obligation on the part of the surety to indemnify the owner so that the property will be free of the lien." Couch, supra, § 47:231 at 371; 17 Am.Jur.2d, supra, Contractors' Bond § 13 at 754-55. This is not the case here as Jackson has not claimed that any lien has been filed against, or attached to, its property.
Accordingly, the summary judgment under review is affirmed.