285 N.J. Super. 137 (1995)
666 A.2d 604
THE DAWSON CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, A CORPORATION AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND FALCONE CONSTRUCTION CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PRESSURE CONCRETE & GROUTING CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND NEW JERSEY HIGHWAY AUTHORITY, AN INDEPENDENT AUTHORITY OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1995.
Decided November 8, 1995.
*138 Before Judges HAVEY, D'ANNUNZIO and CONLEY.
Adrienne L. Isacoff argued the cause for appellant (Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C., attorneys; Steven E. Brawer, of counsel; Ms. Isacoff, on the brief).
David C. Dreifuss argued the cause for respondent (Nagel, Rice & Dreifuss, attorneys; Mr. Dreifuss, of counsel; Randee M. Matloff, on the brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Plaintiff, a landscape subcontractor on a construction project for the New Jersey Highway Authority (Authority), appeals a summary judgment granted in favor of the general contractor's surety, National Union Insurance Company (Surety), and an order permitting *139 the release to the surety of monies held by the Authority.[1] Plaintiff has been paid $81,300.00 by the general contractor, Falcone Construction Corp. (Falcone) for work performed on the job pursuant to the prime contract and its subcontract with Falcone. Plaintiff contends that an additional $59,223.44 is owed. It has obtained a default judgment against Falcone in that amount. Falcone, we are told, is bankrupt and, thus, plaintiff looks to the surety. We, however, affirm the summary judgment and reject plaintiff's contention that it is entitled, as a "claimant" to payment under the surety's labor and material payment bond or, alternatively, that it is entitled, to a pro rata share of the $45,354.19 monies released to the surety, pursuant to the Trust Fund Act, N.J.S.A. 2A:44-148.
Several undisputed facts are critical. The particular payment bond, issued to Falcone as principal and the Authority as obligee, was obtained by Falcone pursuant to its contractual obligation with the Authority. The bond refers to and incorporates the provisions of that prime contract. As defined in the bond, a "claimant" is:
[O]ne having a direct contract with the Principal [Falcone] or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the [prime] Contract [between the Authority and Falcone] ...
It is not disputed that plaintiff has "a direct contract with the Principal" and it is clear that plaintiff's claim is for labor and material that was supplied on the job site.
However, it is also equally evident that plaintiff's claim represents labor and materials provided to Falcone in addition to that expressly required under both the prime contract and the subcontract. That work included supplying off-site topsoil not specified under the prime contract or subcontract, repairing topsoil damaged by others, and re-seeding and mulching areas damaged by others. It seems fairly clear that the additional work was required *140 as a result of Falcone's actions or inactions. Department of Transportation Specification 104.08, which is incorporated into the prime contract, provides in pertinent part:
New and unforeseen work will be classed as Extra Work when it is determined by the Engineer that such work is not covered by any of the various items for which there is a bid price or by combinations of such items. In the event portions of such work are determined by the Engineer to be covered by some of the various items for which there is a bid price or combinations of such items, the remaining portion of such work will be classed as Extra Work. Extra Work also includes work specifically designated as Extra Work in the Contract Documents.
The Contractor shall do such Extra Work and furnish labor, material, and equipment therefor upon receipt of an approved change order or field order, and in the absence of such approved change order or field order he shall not perform, nor be entitled to payment for, such Extra Work.
And see DOT Specification 105.16 ("any [e]xtra [w]ork done without authority, will be considered as unauthorized and will not be paid for under the provisions of the [c]ontract."). Similarly, written authorization or "change orders" are required under the terms of the subcontract to include any additional work within the terms of the contract documents.
There is no dispute as to the applicability of these specifications. The additional work was "new and unforeseen" and Falcone did not obtain a change order for it from the Authority. Thus, without question, the Authority incurred no contractual obligation to Falcone for the additional work out of the contract monies and Falcone has no contractual right to look to those monies for such payment.
Plaintiff, then, possesses no contractual right to look to the Authority or the prime contract monies for payment therefrom. That this is clear is reflected by paragraph 19 of the subcontract which expressly provides in pertinent part:
[s]ubcontractor shall not be entitled to receive any greater amount from Contractor than Contractor is entitled to ... from the Owner on account of Subcontractor's work ... and Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of all claims ...
Paragraph 19 of the subcontract, then, limits plaintiff's contractual entitlement, vis-a-vis the contract monies, to that which Falcone receives from the Authority. Falcone has no right to look to the *141 Authority for reimbursement for the additional work. Similarly, neither does plaintiff. Thus, the surety, whose sole responsibility is delineated by the terms of the bond and those of the incorporated contract documents, has no indebtedness to plaintiff. See 17 Am.Jur.2d Contractors' Bonds § 129 (1990) ("express provisions [of contractor's bond] will control the terms of the contract as regards the rights and liabilities of the public body and the contractor's surety inter sese.").
The bond, by its express terms, incorporates all of the provisions of the prime contract, including those that we have set forth. See generally Amelco Window Corp. v. Federal Ins. Co., 127 N.J. Super. 342, 347, 317 A.2d 398 (App.Div. 1974) ("[w]here ... the surety bond incorporates the prime construction contract by reference, the two, being integrated, must be considered together."). And it is well established that those who seek to benefit from a surety agreement as third-party beneficiaries must look to the terms of the contract between the promisor (the surety) and the promisee (the general contractor) to ascertain their rights. See Ribeira & Lourenco Concrete Constr., Inc. v. Jackson Health Care Assocs., 231 N.J. Super. 16, 21, 554 A.2d 1350 (App.Div. 1989), aff'd, 118 N.J. 419, 571 A.2d 1311 (1990). A surety on a bond is liable only to the extent of the terms of the bond and that responsibility can not be extended by implication or construction. Ribeira & Lourenco Concrete Constr., Inc., supra, 231 N.J. Super. at 21, 554 A.2d 1350. And see Riberia & Lourenco v. Jackson Health, 254 N.J. Super. 445, 451, 603 A.2d 976 (App.Div. 1992) (Ribeira II). Cf. M.G.M. Constr. Corp. v. N.J. Educ. Facilities Auth., 220 N.J. Super. 483, 532 A.2d 764 (Law Div. 1987). As we noted in Ribeira II, supra, 254 N.J. Super. at 451, 603 A.2d 976, "[a] labor and material payment bond guarantees the owner that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults" (quoting 17 Am.Jur.2d Contractors' Bonds § 1 (1990) (emphasis added)).
*142 M.G.M. Constr. Corp. v. N.J. Educ. Facilities Auth., supra, 220 N.J. Super. at 483, 532 A.2d 764, illustrates the point, albeit in the context of a combined performance and payment bond. In M.G.M., plaintiff was one of three co-prime contractors and each had executed separate prime contracts with the New Jersey Educational Facilities Authority. Each supplied the Authority with a single payment and performance bond. As a result of a default by one of the prime contractors, M.G.M. claimed it incurred additional costs on the job. M.G.M. sought payment for the additional work from the defaulting co-prime contractor's surety. In concluding that each co-prime contractor's bond benefits only parties to that particular prime contract, the court observed the M.G.M. had no direct contractual responsibility under the prime contract between the surety's principal (the defaulting co-prime contractor) and the Authority to provide such work. Id. at 487-88, 532 A.2d 764. The court noted further that the prime contract referred to the obligation to provide a bond "`as security for the payment of all persons performing labor ... under this contract and furnishing materials in connection with this contract. ...'" Id. at 488, 532 A.2d 764. Similarly, as to third-party beneficiaries, such rights were created only as to those who provided labor and materials under the prime contract for which the bond was secured. Ibid. M.G.M., then, had no claim against the defaulting co-prime contractor for the work that was furnished on the job but not furnished pursuant to the express terms of the prime contract between the Authority and the defaulting prime contractor.
Here, the bond specifically refers to labor and materials provided under the prime contract. As we have said, the additional work is beyond the scope of both the prime contract and the subcontract. There was neither any authorization by the Authority to change the scope of the work it had contractually agreed to be responsible for, nor was there a change order as required under the subcontract. Furthermore, paragraph 19 of the subcontract expressly acknowledges that any claim plaintiff may have is limited to that which the contractor receives from the Authority. *143 Under these circumstances, the surety has no contractual obligation to reimburse plaintiff for that which the Authority has no obligation under the prime contract. See 17 Am.Jur.2d Contractors' Bonds § 70 (1990) ("the bond of a contractor for public work should not be extended beyond the reasonable intent as gathered from the purpose and language of the instrument construed in connection with the proposals, plans, specifications, and contracts."); Id. § 66 ("[a] surety on a bond issued in connection with a public construction project takes the place of the owner and his property and is entitled to raise the same defenses as the owner in an action brought by a contractor or subcontractor on the bond."). And see Acoustics, Inc. v. The Hanover Ins. Co., supra, 118 N.J. Super. 361, 366-67 (plaintiff subcontractor was entitled to payment from defendant surety for labor and materials furnished under the terms of the original contract and specifications but not for extra work that was not consented to by the surety).
In so concluding, we do not suggest that contractual privity with the owner is a necessary prerequisite for a third-party to be a surety bond beneficiary. See Schlanger v. Federal Ins. Co., 44 N.J. 17, 20-21, 206 A.2d 874 (1965) (materialman who supplied materials within the scope of the subcontract and prime contract to a subcontractor, but who had no direct claim against the owner/obligee on contractor's labor and material bond was, nonetheless, a third-party beneficiary of the owner/general contractor's labor and material bond since prime contract required contractor to pay for all of the specifications required under the contract, which included the materials supplied by the materialman). Accord Amelco Window Corp. v. Federal Ins. Co., supra, 127 N.J. Super. at 346, 317 A.2d 398; Graybar Elec. Co. v. Continental Casualty Co., 50 N.J. Super. 289, 295-96, 297, 142 A.2d 114 (App. Div. 1958). But see Morris County Indus. Park v. Thomas Nicol Co., 35 N.J. 522, 173 A.2d 414 (1961) (supplier of a materialman is not a third-party beneficiary of contractor's bond).
We are cognizant of the frequently espoused suretyship concept that:

*144 [w]here a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor and materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons.

[Restatement of the Law of Security § 165 (1941) (emphasis added)].
See Amelco Window Corp. v. Federal Ins. Co., supra, 127 N.J. Super. at 348, 317 A.2d 398; Graybar Elec. Co. v. Continental Casualty Co., supra, 50 N.J. Super. at 295, 142 A.2d 114; Acoustics, Inc. v. Hanover Ins. Co., supra, 118 N.J. Super. at 364-65, 287 A.2d 482 (Law Div. 1971). To be sure, the bond here does not expressly disclaim responsibility to a subcontractor who provides labor and materials used on the job site but who has no contractual claim to payment therefor from monies paid under the prime contract. But we think the reference in this bond to labor and material supplied in performance of the prime contract implies that requirement  otherwise the surety would become the indemnitor of Falcone for all claims it might have incurred independent of its contractual undertaking with the Authority. That is not the scope of the surety's contractual undertaking here.
We, moreover, distinguish this case from cases concerning the impact upon surety obligations where a general contractor has either not yet been paid or has been paid by the prime contractor, but has not paid the subcontractors. See Amelco Window Corp. v. Federal Ins. Co., supra, 127 N.J. Super. at 349, 317 A.2d 398; Acoustics Inc. v. Hanover Ins. Co., supra, 118 N.J. Super. at 366, 287 A.2d 482. The facts here are not that payment for the additional work has not yet been approved by the Authority, or made to Falcone. Rather, there will be no payment for the additional work under the contract documents.
Plaintiff contends, however, that Falcone by its conduct waived the requirement for change orders under the subcontract provisions, and thus it has a valid contractual claim against Falcone. Were that a claim that plaintiff could pursue against the surety, summary judgment may not have been appropriate. Compare Home Owners Constr. Co., v. Glen Rock, 34 N.J. 305, 316, 169 A.2d *145 129 (1961) with Guizzette v. Katrek, 124 N.J.L. 461, 464-65, 12 A.2d 239 (Sup.Ct. 1940). See J.I. Hass Co., Inc. v. Gilbane Bldg. Co., 881 F.2d 89, 93 (3d Cir.1989), cert. denied, 493 U.S. 1080, 110 S.Ct. 1135, 107 L.Ed.2d 1040 (1990).
But we think it fairly well accepted that:
It has been held both that whatever will estop the principal from asserting a defense will also estop the surety as to that defense, but that a waiver by the principal will not affect the surety. Waiver, unlike estoppel, is always a question of intention, to be proved either by express declarations or by acts or omissions, from which it may be inferred.
[72 C.J.S. Principal and Surety § 127 (1987) (emphasis added)].
We are, thus, of the view that regardless of any factual issues involved in plaintiff's claims of waiver vis-a-vis its claim against Falcone, that claim can not be asserted against the surety.
Finally, we briefly address plaintiff's contention that it is entitled to a pro-rata share of the monies released to the surety. Regardless of whether the Trust Fund Act is applicable since the monies are not "in the hands of the contractor," see National Sur. Corp. v. Barth, 11 N.J. 506, 511, 95 A.2d 145 (1953); Universal Bonding Ins. Co. v. Gittens & Sprinkle Enter., Inc., 960 F.2d 366, 371 (3d Cir.1992), that Act only benefits persons who have valid claims against the owner and monies paid thereunder. See Key Agency v. Continental Casualty Co., 31 N.J. 98, 109, 155 A.2d 547 (1959); Wilson v. Robert A. Stretch, 44 N.J. Super. 52, 56, 129 A.2d 599 (Ch.Div. 1957); Universal Supply Co. v. Martell Constr. Co., 156 N.J. Super. 327, 334, 383 A.2d 1163 (App.Div. 1978).
Affirmed.
NOTES
[1] Those monies, $45,354.19, represent the final payment to the general contractor under the prime contract.