## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

W. E. Brown, Inc.

v.

Pederson Construction
and Tile Co.

July 11, 1990

Case No. (Law) 4111

By JUDGE JAY T. SWETT

This case involves a dispute between a subcontractor, W. E. Brown, Inc., and a general contractor, Pederson Construction and Tile Co., regarding several residential construction contracts. The matter involves work performed primarily during 1985. The contracts can be divided into four different groups. The first is the "Phillips residence" in which Brown had the plumbing, heating/air conditioning and electrical subcontracts. The second is the "Wendall residence" in which Brown had the plumbing subcontract. The third is the "Paul Smith (Ashcroft) residence" in which Brown had the heating/air conditioning and plumbing contracts. The fourth is the "Pederson residence" where Brown was the plumbing subcontractor for Pederson's house.

On December 2, 1988, Brown filed suit to recover $13,528.54 of unpaid invoices, plus late charges for a total of $15,048.86. Pederson's principal defense is that the suit is barred by the three-year statute of limitations for oral contracts.

A preliminary issue to resolve is whether the relationship between Brown and Pederson was such that the suit by Brown is a suit on an open account. Brown argues this was an open account and that the statute of limitations

would not begin to run until the last invoice would have been tendered in January of 1986. This argument is not supported by the evidence. Brown's own records indicate that each job performed for Pederson was considered by Brown to be a separate transaction. Some contracts were on a time and material basis and some were on a fixed price basis. Invoicing was done separately for each job. This was not an open account, but rather a series of separate contracts between Brown and Pederson. The statute of limitations must be measured separately for each contract.

The real issue between the parties is which statute of limitations applies, the three-year statute under Section 8.01-264 or the four-year statute under § 8.2-725. The latter statute is part of Virginia's Uniform Commercial Code. In order for § 8.2-725 to apply, the contract between Brown and Pederson must be a contract for the sale of goods as defined in § 8.2-105 and § 8.2-106.

Both parties submitted case authorities from other jurisdictions discussing whether construction contracts that involve a mixture of labor, material and equipment are subject to the Uniform Commercial Code. A leading case appears to be *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974).

> The test for inclusion or exclusion [in or from the provisions of the UCC] is not whether they [goods and services] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting), or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

499 F.2d at 960.

Pederson argues that the weight of authority is that construction contracts do not constitute UCC transactions. After reviewing those authorities, the issue is not as clear as Pederson has argued. in *Mingledorff's Inc. v. Hicks*, 133 Ga. App. 27, 209 S.E.2d 661 (1974), the Court without explanation or analysis, simply assumes that the

construction contract in question is not within the UCC. In *J. & R. Elec. Div., J. O. Mory Stores v. Skoog Const. Co.*, 38 Ill. App. 3d 747, 348, N.E.2d 474 (1976), the Court determined that the enactment of the UCC did not overrule a prior Illinois Supreme Court decision decided under the former Illinois Sales Act that determined a construction contract not to be within the Illinois Sales Act. Since Virginia never adopted the Sales Act, this case is not helpful. In *Wehr Constructors, Inc. v. Steel Fabricators, Inc.*, 769 S.W.2d 51 (Kentucky 1988), the Court utilized a similar test described in *Bonebrake v. Cox* in terms of analyzing the predominant factor and purpose of the contract. Upon those facts, the contract in *Wehr Contractors* was primarily for services and not goods.

In *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456 (4th Cir. 1983), the Court reviewed a number of cases involving construction contracts for services and equipment in resolving the question of the applicability of the UCC. That Court indicated that there are three principal aspects for determining the nature of the contract. They are (1) the language of the contract, (2) the principal business of the supplier, and (3) the intrinsic worth of the materials involved. 706 F.2d at 460. This appears to be a workable test and is the one which this Court will follow in analyzing the several contracts between Brown and Pederson.

Several of the contracts here do not require this analysis since some of the amounts owed by Pederson fall within three years of the date of filing suit, December 2, 1988, and therefore come within the three-year statute of limitations. The plumbing subcontract for the Phillips residence shows that two invoices totalling $1,530.81 were timely submitted. In addition, three invoices for the electrical work on the Phillips residence were submitted within three years of filing suit. These total $935.68. Finally, the heating/air conditioning contract for the Phillips residence shows an outstanding amount of $1,397.00 billed within three years of the date the suit was filed. These amounts are not time-barred.

The balance of the contracts require a determination of the applicable statute of limitations since all would have been due prior to December 2, 1985.

One of the contracts in dispute is the plumbing contract for the Wendall residence. On that contract there was a total unpaid balance of $153.10. In determining whether or not this contract is one where the predominant factor and thrust was for the rendition for services or for the sale of goods, a review of defendant's exhibit 2 is helpful. There it is seen that value of equipment under the contract represented 64% of the value of the contract, whereas labor represented approximately 28% of the total contract. Thus, even though the principal nature of Brown's business is not as a seller of plumbing goods, it does appear that this particular contract involved a predominant amount for goods. Accordingly, the Wendall plumbing contract is one within the UCC.. Therefore, the unpaid balance of $153.10 is not time-barred.

Another contract in dispute is the heating/air conditioning contract for the Paul Smith residence. In reviewing defendant's exhibit 3, the contract consisted of 45% for equipment, 35% for labor and the balance 20% for material. The contract provided for the purchase and installation of heat pumps and related material. The balance owed is $1,766.00. The evidence is that the amount owed is primarily for two additional heat pumps and a humidifier added on to the original contract. Again, while Brown is not just a seller of heat pumps, humidifiers or heating and air conditioning equipment, it would appear that the primary component of this contract was for heating and air conditioning equipment, even though there was a significant amount of labor involved in the installation. For these reasons the Paul Smith heating/air conditioning contract falls within the UCC and is not time-barred.

Another contract in dispute is for plumbing done at the Pederson residence. Referring to defendant's exhibit 1, approximately 52% of the contract was for equipment and 28% of the contract was for labor. Material represented the balance of 17% of the contract. The contract involved a number of goods including at least nine significant items, including a water heater, dishwasher, bathtubs, showers and sinks. If one of those items was defective, presumably the parties would look to UCC warranties available from not only the manufacturer and the distributor of this equipment, but Brown would also be obligated under those warranties. The Pederson plumbing contract is subject

to the UCC and the total amount of $2,539.02 is not time-barred. On the other hand, an unpaid invoice in the amount of $394.20 rendered in June, 1985 was for services and therefore would be barred by the three-year statute of limitations.

The final contract in dispute is for plumbing at the Paul Smith/Ashcroft residence. The outstanding balance is $1,530.00. Unlike the other contracts, there was very little, if any, documentation placed into evidence regarding this contract. The only evidence consists of written invoices for June and July of 1985. Without further evidence that these contracts fall within the UCC, this amount is time-barred by the three-year statute of limitations.

In addition to the statute of limitations, Pederson raises other defenses to certain of the contracts. With regard to the Wendall plumbing contract, Pederson claims that he was overcharged. However, Pederson acknowledged that the terms of the contract were for time and materials. Pederson's only evidence of being overcharged was that the contract "felt more like a $7,000.00 job" than the amount eventually billed, $8,039.31. This evidence is insufficient to constitute a reduction of the contract price.

Pederson also contends that he was overbilled on the Paul Smith/Ashcroft heating/air conditioning contract. However, the evidence shows that Pederson and Brown agreed to the additional heat pumps and humidifier.

The final point in dispute involves service charges also referred to as late payment fees. Brown's invoices provide for a service charge of 1.5% per month on past due accounts. Pederson contends that service charges were not part of the contract. There is no evidence that Pederson objected orally or in writing to the express terms of the invoice as presented by Brown. The 1.5% late fee was a term of the contract and Pederson owes Brown the service fees. These fees would begin to accrue ten days after the date of the particular invoice.

Accordingly, the plaintiff is entitled to recover from the defendant the total amount of $8,321.61, plus service fees of 1.5% per month on all unpaid balances as of ten days from the date that the amount was invoiced.