## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Harrison's Moving
and Storage Co., Inc.

v.

Princess Anne
Paving Corp., et al.

November 4, 2002

Case No. (Law) CL00-374

BY JUDGE DEAN W. SWORD, JR.

This matter is before the court upon the motion for judgment filed by the plaintiff seeking damages for breach of an oral contract to pave a parking lot at the plaintiff's place of business. The defendant has filed an answer denying liability and has filed a counter-claim seeking recovery of breach of contract for failure to pay the balance of the contract price.

Trial before the court was held on September 11, 2002, at which time both parties appeared with counsel and presented their evidence. Upon the conclusion of the evidence, both parties were given time to file written memoranda, which has been completed. The matter is now fully submitted and is ready for decision.

*Facts*

In large measure there is little conflict in the facts. The principals of both corporations were social friends and prior to the time the agreement was made had discussions about the paving work. In late 1997, the parties entered into an oral agreement whereby the defendant was to pave the parking lot of the plaintiff's place of business. The cost of the project was to be $25,000.00. For

"tax reasons" the plaintiff issued a check dated December 29, 1997, in the amount of $25,000.00 payable to the defendant. (Plaintiff's Exhibit 21.) Sometime in early January 1998 the defendant proceeded with the work and invoiced the plaintiff for a total of $26,900.00. The said invoice was dated January 16, 1998, and showed the contract price of $25,000.00 together with a $1,900.00 charge for "Extra Work." (Plaintiff's Exhibit 22.) While there is no issue as to whether or not the "Extra Work" was in fact performed, plaintiff denies that it was "extra" and was contemplated by the original contract. Defendant, of course, claims that the work was in addition to the original contract.

Both parties agree that problems with the paving arose shortly after the work was completed. Plaintiff presented several experts who testified that the amount of asphalt applied by the defendant was insufficient to carry the heavy loads created by the plaintiff's trucks and forklifts.

The defendant argues that the job was adequate to carry the load created by the trucks, but they were unaware that the plaintiff intended to operate heavy forklifts with solid rubber tires outside of the warehouses. (The warehouses were not part of the job and photographs in evidence seem to show concrete floors in these buildings.) Defendant attributes the failure of the paving (see various photographs admitted as Plaintiff's Exhibits 3-20A inclusive) to the unforeseen operation of the forklifts.

As of the date of trial plaintiff has not repaired the damage even though some failure began as early as late January 1998. Plaintiff presented evidence that the repair cost could range between a low of $13,345.00 (Plaintiff's Exhibit 23) to a high of $32,603.90 (Plaintiff's Exhibit 24) with another bid of $22,750.00 (Plaintiff's Exhibit 25).

The defendant presented evidence that repairs would cost $8,610.00 if it were to perform the work.

Finally, it is agreed that plaintiff mailed the aforesaid $25,000.00 check to the defendant in late January 1998. The check was deposited by the defendant with its bank on or about January 27, 1998, and was duly honored by plaintiff's bank.

## Issues

Both parties have argued similar legal matters: (1) whether there is an implied warranty of fitness for a particular purpose and (2) the responsibility to mitigate damages. In each instance counsel views this contract as one for personal services. The court is of the opinion that one other issue must be examined: whether this is a "sale of goods" which may invoke the Uniform Commercial Code.

*Opinion*

Does the Uniform Commercial Code, "UCC", (Virginia Code, Title 8.1 through 8.11) apply to this transaction? If we can define this contract as one primarily for the sale of goods, then the UCC provisions including it's various warranties apply. Virginia Code § 8.2-105 defines goods as "all things … which are movable at the time of identification to the contract for sale other than money … investment securities … and things in action." (The definition is somewhat more expansive, but would not be of assistance here.) The same code section in subpart 4 further provides "an undivided share in an identified bulk of fungible goods is sufficiently identified to be sold …" Since the contract in question also requires labor to be provided we must consider how that may affect the issue.

The matter of *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974), addressed the application (inclusion) of the UCC to mixed contracts noting:

> The test for inclusion or exclusion is not whether they are mixed but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved … or is a transaction of sale with labor incidentally involved….

While research fails to disclose an opinion of the Virginia Supreme Court treating this issue, three Virginia Circuit Courts have followed *Bonebrake. See W. E. Brown, Inc. v. Pederson Const. Co.*, 20 Va. Cir. 280 (Charlottesville 1990); *Chantilly Partners v. James A. Federline, Inc.*, 26 Va. Cir. 1 (Fairfax County 1991); and *Lane Const. Corp. v. Trading Merchandising Co.*, 34 Va. Cir. 383 (Stafford County 1994). None of these cases including *Bonebrake* are binding precedent; however, this court finds them to be well reasoned sensible decisions and adopts the rule set out in *Bonebrake*.

Having adopted the Bonebrake rule we must apply it to the facts in our case. Clearly our contract contemplated the laying of a large amount of asphalt paving material. Too, the contract contemplated the use of labor and machinery to see to the application of the asphalt. To accomplish the contract both labor and materials had to be combined. The evidence received at trial does not quantify either labor or material in any manner that is helpful. The Court concludes, however, that what this contract contemplated was the delivery and installation of goods, in this case paving. In essence the plaintiff sought to buy paving material and in my opinion the labor aspect, while not insignificant, was incidental to the process.

We therefore conclude that this contract shall be construed under the rules promulgated in the UCC.

The Virginia version of the UCC provides for implied warranties of merchantability (§ 8.2-314) and fitness for a particular purpose (§ 8.2-315). These implied warranties are applicable (implied) unless the parties contract in some other manner. (See § 8.2-316.)

(We also observe that certain common law warranties that are similar to the UCC have been applied to construction contracts. *See Hall v. McLeod,* 191 Va. 665, 625 S.E.2d 42, 45 (1950).)

In our case, we have no evidence of a modification or exclusion of the UCC warranties so we shall examine the evidence to determine how they may apply to this transaction.

To establish a cause of action for breach of the warranty of fitness for a particular purpose a claimant must meet a three prong test: (1) the seller had reason to know the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer if fact relied upon the seller's skill or judgment. (Virginia Code § 8.2-315.)

The implied warranty of merchantability has six requirements: (1) the goods pass without objection in the trade under the contract description; (2) are of fair average quality; (3) are fit for the ordinary purpose for which such goods are used; (4) run of even kind, quality and quantity within each unit; (5) are adequately packaged and identified; and (6) conform to any promises of fact made on the container. (Virginia Code § 8.2-314.)

The Court is of the opinion that these criteria do not fit well in this transaction and while they might be construed to apply, we shall not consider them further since the case may be resolved without them.

Let us then consider the warranty of fitness for a particular purpose. Our evidence indicates that the plaintiff's principal had no special knowledge of the paving business. The defendant's representative, however, testified that he had been engaged in this business since 1979 and presented himself as having the requisite knowledge and experience to do this job. In fact, both representatives testified that the defendant had paved the lot of at least one other local moving company. Plaintiff's principal had even been referred to the other job to observe the quantity and quality of the work. The representative of the defendant further testified that an inspection of the plaintiff's premises was made prior to bidding the job. This inspection made defendant aware of the large trucks that used the lot on a daily basis. It would seem, and we so find, that test number one is satisfied.

The testimony of both parties leads the Court to conclude that the defendant was aware that his judgment and skill was the sole basis of this contract. This fact is established as much by what was not done as what was. Admittedly, the transaction was very casual. The plaintiff needed paving at his premises. The plaintiff approached the defendant as a friend and asked if he could do the job. No specifications, engineering design, site testing, or even a written contract was contemplated. What the plaintiff asked was can you do a proper job and what will it cost.

The defendant answered the question in the affirmative and provided an acceptable price. The reliance issue is further enforced by the defendant's representation of his previous performance at a similar facility.

Finally, the plaintiff said it relied on the defendant completely and there is no evidence to contradict this point.

Clearly, we can come to only one conclusion: the UCC warranty is applicable to our case.

Having determined that the warranty applies as a matter of law, do the facts of this case support a claim?

There is a dispute in the evidence as to whether the defendant was aware of the operation of the forklifts over the parking lot and whether the forklifts were the primary cause of the failure of the paving.

The problem that the Court has in resolving this issue is the lack of convincing evidence that the forklift operation was the primary cause of the failure. No expert testimony was presented espousing such a theory and, keeping in mind that the plaintiff operated very large (and presumably heavy) trucks over this paving on a daily basis, the Court is unwilling to assume that fact. The evidence also demonstrated that the defendant was aware of the existence of the forklifts prior to beginning the job. If the defendant had concerns about the operation of the forklifts, he should have taken steps to acquire additional information before beginning the job. While the evidence does show that the forklifts were driven over the paving there is also no evidence that quantifies this activity. In short, the Court is not convinced that the blame for the failure may be attributed to the operation of the forklifts, to the exclusion of the trucks. The Court also believes that the evidence shows that the defendant was aware of the forklifts and even if we postulate them as being the cause of the failure, this would not relieve the defendant from responsibility.

We, therefore, find that the defendant is liable and move on to this issue of damages.

Having determined that the liability is based upon the UCC, we also must look to the UCC for any special rules that govern damages.

Section 8.2-715 of the Code provides for the recovery of incidental and consequential damages by a buyer. The evidence we have received makes no claim for incidental damages leaving only the question of consequential damages, which are "(a) Injury to ... property proximately resulting from any breach of warranty."

Obviously, this provision is a garden-variety breach of contract rule as is found in our common law. We also are of the opinion that all contract damages, even a contract created in part by law, are subject to the common law rule that the plaintiff must make reasonable efforts to minimize his consequential damages. *Haywood v. Massie*, 188 Va. 176, 49 S.E.2d 281, 284 (1938).

Applying this set of rules to the evidence in this case, the Court concludes that the proper measure of plaintiff's damages is $13,345.00. The Court arrives at this figure because it reflects true repair cost as opposed to total replacement of the entire lot. (Plaintiff's Exhibits 24 and 25 provide for repairing the entire lot.)

The final matter is the counterclaim of $1,900.00 sought by the defendant. The evidence is disputed as to what was contemplated by the original agreement. This Court cannot after the fact make a new contract for the parties. Based on the evidence I am of the opinion that the defendant has failed to prove by a preponderance of the evidence that it is entitled to recover the additional $1,900.00 and so the counterclaim is dismissed and the recovery sought denied.

Counsel for the plaintiff shall prepare an order granting judgment against the defendant in the amount of $13,345.00 together with taxable cost.